### Richmond.

## NEW YORK LIFE INSURANCE CO. v. DAVIS.

### FEBRUARY 8, 1899.

#### Absent, Cardwell, J.

1. FRAUD—*How Proved—Circumstantial Evidence.*—Fraud may be established by circumstantial evidence as well as by direct testimony, but, in either case, it must be clearly and satisfactorily proved. It will not be presumed from doubtful evidence, or circumstances of suspicion. The law never presumes fraud, but the presumption is always in favor of innocence and honesty.

2. LIFE INSURANCE—*Assignment of Policy—Insurable Interest.*—Where a life insurance policy, valid in its inception, has been assigned by the insured, as a security for premiums advanced by the assignee who is not otherwise interested in the life of assured, the limit of the assignee's recovery is the amount necessary to reimburse him for his advances. In the case at bar the evidence does not show that the policy was void in its inception.

Appeal from a decree of the Circuit Court of Henry county pronounced November 2, 1897, in a suit in chancery wherein the appellee was the complainant, and the appellant and another were the defendants.

*Affirmed.*

The opinion states the case.

*E. W. Saunders,* for the appellant.

*W. M. Peyton, Hairston & Gravely, B. B. Munford* and *Peatross & Harris,* for the appellee.

RIELY, J., delivered the opinion of the court.

VOL. XCVI—93

On May 29, 1895, a policy of insurance was issued by the appellant to John W. T. Davis upon his life for $1,000; and on June 20, 1895, it issued to him another policy upon his life for $3,000. Both policies were taken out by Davis for the benefit of his estate, and were both assigned by him on June 27, 1895, to W. W. Lester, who had advanced for him the premium on each policy.

On February 24, 1896, Davis died under circumstances indicating that he had been poisoned, and suspicion pointed to Lester as the perpetrator of the suspected crime. He was arrested, indicted, and tried in the county court of Henry county, but acquitted.

In the meantime, the father of Davis, he being the distributee of the deceased, filed his bill to enjoin Lester from collecting, and the Insurance Company from paying to him, the money due on the policies, and to compel the payment of the policies to the administrator of the deceased when appointed, except so far as necessary to reimburse Lester for the premiums he had advanced. The father subsequently qualified as the administrator of his son, and the suit thereafter proceeded in his name as such fiduciary.

The Company resists all liability on the policies, upon the alleged ground that the application for the insurance was not the result of the volition of Davis, and did not emanate from him, but that he was induced by Lester to take out the policies, and that it was only at the instigation and by the persuasion of Lester that he did so; that Lester, at the time he induced Davis to effect the insurance, had formed the purpose to procure from Davis an assignment of the policies, and then take his life in order to collect the policies; and that when the policies were issued to Davis, Lester did procure from him an assignment of them to himself, and subsequently murdered him.

It was conceded that, if the policies were taken out by Davis in good faith and were valid in their incipiency, their subse-

quent assignment to Lester, although procured by him with a view to the murder of the insured and the collection of the policies, would not prevent a recovery on them for the estate of the deceased.

Upon the Company rests the burden of making good its defence, and establishing the alleged fraud. This it undertook to do, and it may be conceded that a number of facts and circumstances were shown in evidence which tend to excite suspicion that there was some foundation for the accusation of the Company; but upon a full and careful consideration of all the evidence, it falls short of that clear and satisfactory proof required to establish fraud. Fraud may be proved by circumstances as well as by direct evidence, but the circumstances, as in the case of direct evidence, must clearly and satisfactorily establish the fraud. It is not to be assumed on doubtful evidence or circumstances of mere suspicion. It must be clearly and distinctly proved. The law never presumes fraud, but the presumption is always in favor of innocence and honesty. *Engleby* v. *Harvey*, 93 Va. 440.

An effort was made to liken this case to that of *New York Mutual Life Insurance Co.* v. *Armstrong*, 117 U. S. 591, but the two cases are very dissimilar in their material features.

In that case it was proved that the application for the insurance was instigated by Hunter, and the policy procured wholly for his benefit. It appeared in evidence that, on the 3d or 4th of December, 1877, Hunter made enquiry at the office of the Company in Philadelphia as to the rates of insurance on the life of a person aged about forty or forty-one years, upon an endowment policy of twenty years, stating that he thought of insuring for his own benefit the life of a person in the sum of $10,000. After some conversation on the subject of insurance generally, he left, stating that the person to be insured would probably call in a day or two. On the 5th of the month, Armstrong called, and informed the agent that he came at the request of Hunter to make application for a life insurance. He was thereupon

examined, and, after answering the questions usually propounded to applicants, he signed a formal application, leaving blank, however, the place for the amount of the insurance desired, and for the answer to the question respecting the manner of paying the premiums. He, at the same time, executed an assignment of the policy, leaving blanks for its date, and that of the policy, and for the name and residence of the assignee. This was his entire connection with the transaction. In the afternoon of the same day, or on the following morning, Hunter informed the office that the amount of the insurance desired was $10,000, and that it would be more convenient for him to pay the premiums quarterly. The blanks left by Armstrong in the application were thereupon filled, and the application forwarded to the home office of the Company in New York. Before the receipt of the policy at the office in Philadelphia, Hunter called and paid the premium, and stated that his lawyer would call for the policy and the assignment, and they were subsequently delivered to Hunter. Within six weeks thereafter, Armstrong was attacked at night, and died from the wounds he received. Suspicion fell upon Hunter as the perpetrator or instigator of the attack. He was accordingly arrested and tried for the murder of Armstrong, convicted and sentenced to be hanged, and the sentence executed.

In the case at bar, the application for the insurance was made by Davis, and not by Lester. It was applied for by Davis for the benefit of his estate, and not for the benefit of Lester. There is no evidence of any agreement at the time the insurance was applied for, or at any other time prior to the assignment, that Davis was to assign the policies to Lester. It is true that he was encouraged by Lester to take out the policies, but he was also encouraged by the other persons present— at least, when the first policy was applied for. The policies were issued by the Company, and delivered to Davis as their owner; and he afterwards assigned them to Lester, in whose employment he was, and who had promised to see the first

premium on the policies paid, and did pay them before the assignment.

In *New York Life Insurance Co* v. *Armstrong, supra,* it was stated by the court that " the assignment conveying to Hunter the whole interest of the assured, his representatives alone would have a valid claim under it, if the policy were not void in its inception; " but Lester, even if he honestly acquired the assignment of the policies on the life of Davis, the policies not being proved to be void in their inception, would have only had a claim under them for the amount necessary to reimburse him for the premiums he had paid. However valid the transaction, this was all that he could recover in any event, and the residue of the proceeds of the policies belong to the estate of the insured. *Roller* v. *Moore's Adm'r,* 86 Va. 512, and *Long* v. *Meriden Britannia Co.,* 94 Va. 594.

The court, by its decree, forfeited to the Company an amount equal to the premiums paid by Lester, and only decreed the residue of the policies to be paid to the estate of the insured. The evidence does not justify, nor public policy require, a decree more favorable to the appellant.

The decree must be affirmed.

*Affirmed.*