## EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES et al..v. WEIGHT-MAN.

No. 7787—Opinion Filed Oct. 17, 1916.

(160 Pac. 629.)

**1. Insurance—Right to Proceeds—Wrongful Act of Beneficiary.**

A beneficiary in a policy of life insurance, who murders the assured, is thereby barred from collecting the insurance money.

**2. Same—Assignment—Rights of Assignee.**

The insurance policy being a nonnegotiable instrument, the assignee of such a beneficiary has no better claim upon the insurance money than his assignor.

**3. Insurance—Right to Proceeds — Joint Polices.**

Provisions of a life insurance policy upon the lives of two persons, providing for the payment of the insurance fund to the survivor of the first decedent, examined, and held, that the policy in question, so far as the insurance fund payable on such contingency is involved, is a several policy upon the life of each of the assured, and that the interest of the assured persons in such expectancy is not a joint tenancy, by reason of which one takes by the right of survivorship upon the death of the other, but that the survivor takes, if at all, under the contract.

**4. Same—Estate of Insured.**

Where no alternative beneficiary is designated in a contract of life insurance, and the designated beneficiary becomes barred from taking the benefits of the policy by reason of the fact that she has murdered the assured, in the absence of a statute which provides an alternative beneficiary, by operation of law a trust arises in favor of the estate of the assured, by virtue of which the representative of the assured is entitled to recover the insurance fund.

**5. Judgment for Intervener—New Trial Refused.**

Held, no error in rendering judgment for intervener and overruling motion for new trial.

(Syllabus by Johnson, C.)

Error from District Court, Cleveland County; F. B. Swank, Judge.

Action by Ben F. Williams against the Equitable Life Assurance Society of the United States, and J. T. Weightman, administrator of the estate of Thomas J. Gentry, intervenes. Judgment for intervener, and plaintiff and defendant bring error. Affirmed.

Alexander & Green, Stephen C. Treadwell, and Locke & Locke, for plaintiff in error Equitable Life Assur. Soc.

Lydick & Eggerman, for plaintiff in error Williams.

Kittie C. Sturdevant and Dorset Carter, for defendant in error.

Opinion by JOHNSON, C. This action was filed upon January 4, 1913, in the district court of Cleveland county, by Ben F. Williams, as plaintiff, against the Equitable Life Assurance Society of the United States, as defendant, for the recovery of $2,000 upon a policy of life insurance on the life of Thomas J. Gentry, deceased, the plaintiff having become the owner by assignment of the rights of the beneficiary in the policy. The defendant resisted recovery upon the ground that, as contended by it, there was no liability under the policy for the reason that the beneficiary, Alverta B. Gentry, had murdered the insured, who was her husband, and thereby forfeited her right to the insurance and terminated all liability of the insurance company. J. T. Weightman, as administrator of the estate of the insured, Thomas J. Gentry, deceased, intervened in the cause, alleging that Alverta B. Gentry, the beneficiary named in the policy, had murdered the insured, and thereby forfeited her right to the insurance, but that he, as such administrator, was entitled to the insurance. The case was tried to the court upon the pleadings and an agreed statement of facts. The lower court rendered judgment in favor of the intervener, J. T. Weightman, administrator of Thomas J. Gentry, and against the plaintiff and defendant, awarding the insurance to the administrator. Plaintiff and defendant bring the case here on appeal.

The policy in question was issued upon April 7, 1910, covering and insuring the lives of both Thomas J. Gentry and Alverta B. Gentry, husband and wife, respectively, in the sum of $2,000. The principal insuring clause of the policy reads as follows, to wit:

"In consideration of the payment in advance of sixty-nine 74-100 dollars, and of the payment annually thereafter of a like sum upon each fifteenth day of March until the death of either Thomas J. Gentry, of Oklahoma, Okla., or his wife, Alverta B. Gentry of Oklahoma, Okla., (hereinafter jointly called the insured) the Equitable Life Assurance Society of the United States agrees to pay at its home office in the city of New York two thousand dollars upon receipt of due proofs of the death of either one of the insured, provided this policy is then in force and is then surrendered properly released, to the survivor of the said Thomas J. Gentry and Alverta B. Gentry, beneficiaries,

with the right on the part of the insured to change the beneficiary."

The policy also contained the further clause, with reference to change of beneficiary, as follows, to wit:

"Change of Beneficiary. If the right to change the beneficiary has been reserved, and there is no written assignment of this policy on file with the society, the insured may from time to time during the continuance of this policy, change the beneficiary or beneficiaries by a written request (upon the society's blank) filed at its home office, but such change shall take effect only upon the indorsement of the same hereon by the society."

And the policy contained the further clause as follows, to wit:

"Incontestability. This policy shall be incontestable after one year from its date of issue, provided premiums have been duly paid. Self-destruction, sane or insane, within one year from said date of issue is a risk not assumed under this policy."

The policy contained other provisions usual in such instruments. There was no provision, specifically affecting liability in the event of the murder of either of the insured by the beneficiary of his or her insurance. The instrument provided for certain cash values after the payment of specified numbers of annual premiums.

It was agreed between the parties that on or about the 6th of January, 1912, the said Alverta B. Gentry had willfully, unlawfully, and feloniously caused the death of the said Thomas J. Gentry by murdering him with malice aforethought, and had been legally convicted of murder, under a charge therefor, and sentenced to the Oklahoma State Penitentiary for the term of her natural life. It was also conceded that the premiums on the policy had been duly paid, and that the plaintiff Ben F. Williams by assignment was the owner of the rights of Alverta B. Gentry in the policy, whatever such rights may be; and it was agreed that the intervener was the duly qualified administrator of the estate of Thomas J. Gentry, and had properly intervened in the cause, and that the said Thomas J. Gentry died intestate, leaving as his sole heirs at law the said Alverta B. Gentry, his wife, and Theodore R. Gentry, the minor son of both of such insured. The insurance company made no contest upon formal grounds, and relied upon the contentions herein mentioned.

Plaintiff in error the insurance company contends: (1) That Alverta B. Gentry, the beneficiary in the policy, having murdered her husband, by that act forfeited her right to collect the insurance on his life. (2) That the plaintiff Ben F. Williams, as assignee of Alverta B. Gentry, has no better claim upon the insurance than she would have, and cannot take the money because of her crime. (3) That under the laws of Oklahoma a man and his wife may own property as joint tenants and upon the death of either that property will be owned by the survivor, not by inheritance, but by survivorship, and that the insurance policy prior to the death of Thomas J. Gentry was a chose in action owned by him and his wife as joint tenants, and on the death of Thomas J. Gentry the benefits accruing under the policy vested, if at all, in Alverta B. Gentry: (a) By the terms of the policy itself; (b) by survivorship. That Alverta B. Gentry forfeited the right to take this benefit by her crime, and the law at the time the murder was committed failed to designate who should take it in her stead. (4) That Alverta B. Gentry, being the survivor of the two lives insured, was the only person entitled by the terms of the contract to collect the insurance. That her right and that of her assignee were forfeited by her crime, and, there being no trust created by statute or contract, and there being no alternative payee according to the terms of the contract, there could be no resulting trust in favor of the estate of Thomas J. Gentry, deceased, and that it necessarily follows that the administrator, J. T. Weightman, has neither statutory nor contractual right to recover. And (5) that the court erred in rendering judgment for intervener and in overruling its motion for a new trial.

Plaintiff in error Ben F. Williams, in his brief states that he is inclined to believe, without so confessing, that the law is as contended for by defendant in error, but contends that, if this court finds that Thomas J. Gentry and Alverta B. Gentry were joint tenants as to the policy and liability thereunder, as contended by the insurance company, in that event the benefits of the policy went to Alverta B. Gentry, as the survivor of such joint tenancy, and that he, as the assignee of such survivor, should take such benefits.

Defendant in error, the administrator of Thomas J. Gentry, deceased, admits that, by her act of murdering insured, the beneficiary forfeited her right and the right of her assignee to take and hold the benefits of the policy, and contends that the policy was not joint, but a several policy upon the lives of each of the insured, and that for this reason no rule of joint tenancy and survivorship can be invoked; and that, when the right of the nominal beneficiary, Alverta B. Gentry, to take under the policy was forfeited by her act of murder, a resulting trust arose by

operation of law under which the rights of the beneficiary were vested in the estate of Thomas J. Gentry.

Since the accrual of the rights of these parties, the Legislature of this state has enacted a statue (Session Laws of Oklahoma of 1915, p. 225) which provides that in such a case as this benefits of the policy would go to the decedent's heirs, who are innocent of the murder. However, this statute has no application to these facts, which occurred before its enactment.

We shall take up the various propositions involved here in the order above set forth.

1. Did Alverta B. Gentry, the beneficiary, forfeit or lose the contractual right to take and keep the benefits of the policy, by her act of murdering the insured? We are of an affirmative opinion.

It is an established rule in this court that, in the absence of a statute to the contrary, one does not lose his right of inheritance from a decedent by reason of his having murdered the decedent. However, a beneficiary in a policy of life insurance takes the benefits of the policy by reason of the contract of insurance, constituted by the policy, and not by inheritance from the insured decedent; and this principle is conceded by all of the parties in this cause. This being true, the rights of the plaintiff, as the assignee of the beneficiary, must necessarily be determined from the effect of the legal and contractual relations which have been sustained by the beneficiary toward the policy, and without reference to the laws of inheritance.

The policy itself made no provision for a disposition of the liability, nor of its benefits, in the event of the murder of the insured by the beneficiary. In the absence of such a specific provision by the parties in their contract, the status of the parties must be ascertained by reference to the rule of law and equity applicable to the situation. The inherent essence and vitality of every contract are drawn from the legal and equitable atmosphere surrounding it. The law writes between the lines of every contract its own innumerable inhibitions and requirements. Where the contracting parties fall short in expression the law goes on, and where the parties go too far it calls a halt. When one person becomes the beneficiary of the contract of others, such beneficiary is an implied party to the agreement. Before he may accept the benefits of the contract, he must accept all of its implied, as well as express, obligations. In this case, Alverta B. Gentry was an express party. It is our conception of the law that, when she accepted the position of beneficiary in the life insurance of Thomas J. Gentry, the law infused into the contract, as an essential part of it, an implied obligation upon her part that she would respect the intentions of the contract. The very strongest implied inhibition of the law was that she should not mature the benefits by her own criminal act. Every moment of the life of the contract, obedience to this inhibition was her obligation. When she criminally destroyed the life of her husband, she violated every intent of the contract. She abandoned the contract, and cannot claim its benefits. In the strict sense, she does not forfeit these benefits: she abandons them. Human law is the offspring of divine law. One of the strongest principles of that law is compensation. Every man compensates his own wrong. He cannot claim the benefits of it.

It is a matter of universal judicial interpretation that one may not insure his house against fire, mature the risk by his own criminal act of arson, and collect his insurance. It would be no less a violation of the infinite spirit of the law that the beneficiary of a life insurance policy might murder the insured, by his own criminal act mature the risk, and then collect from an innocent party the fruits and benefits of his own wrong. The following authorities support the theory that, by her act of murdering insured, the beneficiary has forfeited or surrendered any right to take the benefits of the policy, viz.: 25 Cyc. 195 (d); Mutual Life Insurance Co. v. Armstrong, 117 U. S. 599, 6 Sup. Ct. 877, 29 L. Ed. 997; Riggs et al. v. Palmer et al., 115 N. Y. 506, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819; Schmidt v. Northern Life Association, 112 Iowa, 41, 83 N. W. 800, 51 L. R. A. 141, 84 Am. St. Rep. 323: Richards on Insurance, p. 81; Vance on Insurance, p. 392; Kerr on Insurance, p. 685. In the Armstrong Case, supra, the Supreme Court of the United States used this expression:

"It would be a reproach to the jurisprudence of the country, if one could recover insurance money payable on the death of a party whose life he had feloniously taken. As well might he recover insurance money upon a building that he had willfully fired."

In the Schmidt Case, supra, the Supreme Court of Iowa made this language its own, and said:

"Indeed, the unbroken voice of authority is to the effect that a beneficiary in an insurance policy who murders the insured forfeits his rights thereunder."

In the Schmidt Case, and in the text-books above cited, long lists of authorities are cited in support of this principle, which it is not necessary to more than refer to here. We

find no authority to the contrary, and must hold to the theory that by her act of murder Alverta B. Gentry is barred from claiming the benefits of the policy. Under a later assignment. we quote from additional authorities on the subject.

2. It is contended by the insurance company and administrator that the plaintiff, as the assignee of Alverta B. Gentry, has no better claim to the insurance than she had. The policy in its terms is a nonnegotiable instrument; and it is unquestionably the law that the assignee takes no greater interest than the assignor has.   25 Cyc. 765; Conn. Mut. L. Ins. Co. v. Burroughs, 34 Conn. 305, 91 Am. Dec. 725; Stevens v. Germania Life Ins. Co., 26 Tex. Civ. App. 156, 62 S. W. 824; Schmidt v. Northern Life Ins. Ass'n, 112 Iowa. 41, 83 N. W. 800, 51 L. R. A. 141, 84 Am. St. Rep. 232; Mutual Life Ins. Co. v. Armstrong, 117 U. S. 599, 6 Sup. Ct. 877, 29 L. Ed. 997; Cooley's Ins. Briefs, p. 3811, and cases there cited.

3. Plaintiff in error, the insurance company, further contends: That the insurance policy was a chose in action, owned by Thomas J. Gentry and Alverta B. Gentry as joint tenants. That on the death of Thomas J. Gentry the benefits of the policy vested, if at all, in Alverta B. Gentry; (a) By the terms of the policy itself; (b) by survivorship. That Alverta B. Gentry by her crime forfeited the right to take by survivorship. That, as the law, at the time of the murder, failed to designate who should take in her stead, the policy lapsed to the insurer.

Under the discussion of this assignment, we shall deal with the question of the alleged joint tenancy, survivorship, and forfeiture of rights of survivorship, leaving to a discussion of the next assignment the question of what ultimate disposition the law may make of the benefits of the policy.

Upon this proposition, we find no exact precedent, and none is cited in the briefs before us. The insurance company contends that the policy was a joint one; that the interest of the insured was joint; that the policy was expressed as being a joint policy; that under the terms of the policy the ownership of cash values which might have accrued during the lifetime of both insured would have been joint, and that this condition creates such a joint tenancy between husband and wife as would put in operation the law of survivorship, so that the wife could only take by survivorship; that she forfeited this right by the murder, causing a complete termination of liability of the company. With this contention we are unable to agree. In the insuring clause of the policy, the Gentrys were referred to as "hereinafter jointly called the insured," and they are thereinafter jointly referred to as "the insured." The policy provides for certain benefits which might have accrued during the lifetime of both insured, providing a joint enjoyment of such lifetime benefits; for instance, cash values on the policy to accrue during the lives of both of the insured.' And yet, while it insured both lives, and for the purposes of convenience adopted a joint expression by which to designate both of the insured without circumlocution, and provided for joint enjoyment of the benefits intermediate to the maturity of the principal liability, the very essence and gist of the contract was that it was a separate policy upon the life of each of the insured, for the wholly separate benefit of each of the insured.

To the existence of a joint tenancy, it is conceded by all of the parties, and is the law, that four unities must exist in the tenants, viz.: (1) Unity of interest; (2) unity of title; (3) unity of time; and (4) unity of possession. These unities do not coincide in this matter, particularly as to the principal subject-matter of the contract, the insurance fund, or the right of expectancy in it. The interest of Alverta B. Gentry in the ultimate and principal benefit was wholly dependent upon the happening of one contingency, viz. the death of Thomas J. Gentry; and the interest of Thomas J. Gentry was just as dependent upon another and entirely different contingency, viz. the death of Alverta B. Gentry. The interests of both could not be the same, and could not vest at the same time, for the vesting of one interest would terminate the expectancy and interest of the other; and the unities would necessarily be broken.

It seems to us that the four unities might concur in the benefits which might have arisen under the policy during the lives of both parties, aside from the benefit of expectancy, but the expectancies, which constituted the principal subject-matter, were wholly contrary, each to the other, and different in the essentials. To technically analyze the contract, as to the estates created by it, it brought into being at least two entities of ownership:   (1) An ownership or estate in the benefits which might have accrued during the lives of both parties exclusive of the principal expectancy in the insurance fund, which was a present, joint estate, which would lapse on the death of either of insured; and (2) an estate severally to each of the insured in the principal expectancy in the insurance fund of $2,000, which was in the nature of a contingent remainder, depending upon a contingent determination of

the preceding estate; it remaining uncertain whether the estate limited in the future would ever vest. In the orderly course of events, if the premiums had been kept paid, it was certain that one or the other estates, designated as being in the nature of an estate in remainder, was certain to vest, and yet neither owner possessed any certainty that his particular interest would vest.

If the contention of the insurer that the two insured persons owned all rights under the policy as joint tenants be correct and Alverta B. Gentry succeeded to such rights. as survivor, by virtue of the provisions of the statute, then such taking would have come by virtue of the statute, and then following out our rule that, in the absence of a statute, the murderer did not forfeit his inheritance, Alverta B. Gentry would recover the insurance fund. Thus, it will be seen that the contentions of the insurance company, in this particular, are in themselves not consistent.

It is our conclusion that the estates in the expectancy were not a joint tenancy, and that she did not take as survivor.

4. It is contended by plaintiff in error the insurance company that Alverta B. Gentry, being the survivor of the two lives insured, was the only person entitled by the express terms of the contract to collect the insurance; that her right and those of her assignee. being forfeited by her crime, no trust was created by statute or contract, and, there being no alternative payee according to the terms of the contract, there could be no resulting trust in favor of the estate of Thomas J. Gentry; that it necessarily follows that the administrator, J. T. Weightman. has not the right to recover; and that, as a consequence of this situation, liability of the insurer is at an end. The administrator of the estate of Thomas J. Gentry, deceased, contends that, as a result of the existing situation, a resulting or constructive trust has arisen by operation of law, under which the beneficial rights of the policy are vested in the said estate of Thomas J. Gentry, deceased. There is no question of fraud in the inception of the contract raised, and the policy is expressly incontestable after one year from its date. which time had expired. The policy contains no provision for an alternative beneficiary. in the event of the disqualification of either beneficiary. It has no provision that it should be forfeited, in the event of the murder of the insured. and no condition of any kind against murder. Neither the beneficiary. nor her assignee, can recover because of the wrong perpetrated by her; but does her wrong absolve the insurer from liability? We are of a contrary opinion. To so hold would avoid the policy, and sweep out of existence the obligations which the contract created as between the insurer and Thomas J. Gentry, who has committed no wrong, but who has been the victim of the utmost wrong. Thomas J. Gentry paid the premiums upon this policy, and was as essentially a party to the contract of insurance upon his own life as either the insurer or the beneficiary. He is as innocent of the crime against himself and against the contractual relations of the parties as is the insurer. His murder was an event over which he had no more control that did the insurance company. His homicide was the highest degree of murder, which means that he was wholly without fault in bringing it about. So far as he is concerned, the event which matured the policy, if it be held to have so done, was as free of his fault as if he had been stricken down by the germs of some deadly disease, instead of by the hand of his wife. Can it be gainsaid that he had rights under his contract? Can we hold that those rights have been obliterated without his consent, without his fault? We do not think that the law of contracts, public policy, or equity would demand such a consummation.

If Alverta B. Gentry had inflicted the fatal injury upon her husband, and he had lingered, and she had died of natural causes prior to his death, her act, resulting in the death of her husband, would have been none the less murder because she preceded him in death, and yet could we say that her act could have deprived her husband of the insurance upon her life, she having died first of natural causes, and at the same time have deprived the husband's estate of the insurance upon his life? Again, let us assume that the policy may have been an expressly separate one upon the life of the husband, for the benefit of the wife; that after the fatal injury at the hands of the wife the husband lingered for some time. too weak to consider making a change in beneficiary; that during the lingering of the assured the annual premium on the policy had become due; and that, during a moment of consciousness, the assured had called to some one at his bedside to take his money and attend to his insurance premium. Would we say that the criminal act of the beneficiary had already terminated the policy. and that insurer could refuse the premiums of the stricken man? Could the wife abandon the rights of the husband for him? These illustrations serve to show us that the rights of the murdered man are wrapped up in this litigation.

We have found no decisions from other

courts involving this question under a policy exactly like this one, one policy upon two lives. However, we have concluded in this opinion that this policy partakes of the nature of two separate polices upon the life of each of the insured. As to individual policies, there is abundant authority from other courts, and it seems almost unanimous, to the effect that if the insured be murdered by his beneficiary, or if for any other reason the beneficiary be disqualified, the policy and the law not specifically providing an alternative beneficiary, a resulting or constructive trust arises by operation of law, by which the benefits of the policy vest in the insured, or in his estate in event of his death. 25 Cyc. 895 (d), and authorities in footnote 6; Richards on Insurance (3d Ed.) p. 81; Vance on Insurance, p. 393; Kerr on Insurance, p. 685; Cooley on Insurance, pp. 3753-3760; Schmidt v. Northern Life Ass'n, 112 Iowa, 41, 83 N. W. 800, 51 L. R. A. 141, 84 Am. St. Rep. 323; Continental Life Ins. Co. v. Palmer, 42 Conn. 60, 19 Am. Rep. 531; Smith v. Metropolitan Life, 222 Pa. 226, 71 Atl. 11, 20 L. R. A. (N. S.) 928, 128 Am. St. Rep. 799; Cleaver v. Mutual Res. Fund. Life Ass'n, 122 Q. B. 147 (Canada); Standard Life Assurance Co. v. Trudeau, 9 Quebec Q. B. 499 (Canada); Ryan v. Rothweiler, 50 Ohio St. 595, 35 N. E. 679. All of the textwriters whose works we have been able to survey have written this theory into their books, and those above referred to furnish in their notes most extensive citations of cases supporting this doctrine. Richards on Insurance, supra, lays down the rule thus:

"It need hardly be stated that the beneficiary will not be permitted to recover if he intentionally brings about the death of the insured. But in such an event, if the insured has committed no breach of contract, a resulting trust in the insurance money is inferred in favor of his estate, since it would be harsh indeed to adjudge a contract void when the contracting party himself has violated none of its terms."

Vance on Insurance, supra, states the rule thus:

"But while the felonious act of the beneficiary will defeat his rights under the policy, it seems that it will not serve as a defense to the insurer, who must pay the amount of the insurance to the representatives of the insured, to whom the property in the policy is deemed to revert."

Kerr on Insurance, supra, says:

"A beneficiary in an insurance policy, who murders the insured, forfeits all rights under the policy, but the liability of the company is not thereby terminated. The benefits revert to, and become a part of the estate of the insured, and his administrator can recover them, for the benefit of those who would

have been entitled to the insurance, had no beneficiary been designated."

In Ryan v. Rothweiler, supra, the beneficiary died before the death of the insured, and the Supreme Court of Ohio said:

"The question is not governed so much by the principles of choses in action and vested rights as by the principles, aims, and well-known objects of life insurance. The cases which hold the insurance money to be a trust fund, which reverts to the estate of the assured in case of the death of all the named beneficiaries during the lifetime of the assured, give different reasons for the result arrived at. * * * The theory of a failure of trust comes with more force and stronger reasons than the doctrine of choses in action, so strongly urged by * * * plaintiff in error. We regard the doctrine of choses in action as not fully applicable, because it conflicts in many cases with the controlling doctrine of insurable interest. * * * On principle, therefore, and aside from any statute on the subject, we think that in this case the policy reverted to Mr. Helwig (the assured) and at his death became a part of his estate. It seems to us that this was the manifest intention and understanding of all of the parties interested, and that the result is just and equitable."

The case of Schmidt v. Northern Life Association, supra, by the Supreme Court of Iowa, is one of the best-reasoned cases upon this subject, and contains an extensive citation of precedents. In that case, which was a case in which the wife as beneficiary in the policy had murdered her husband, who was the insured, the court said:

"Defendant obligated itself to pay on the death of the assured, and it ought not to be held that the act of the beneficiary forfeited all claim under the policy. The wife cannot recover, because it is contrary to public policy to allow her to enforce the claim. But this rule of public policy ought not to be extended so as to defeat all claims on the policy. We have seen that when there has been no designation, or an illegal designation, or a designation of a person as a beneficiary who dies before the death of the assured, the association holds the money in trust for the * * * estate of the assured. Following this doctrine to its logical conclusion, it seems to us that, when the beneficiary named is prohibited from taking because of her own wrong, a trust arises that will be enforced in a proper case. This trust is created in favor of the husband's estate, and takes effect by reason of the crime of the wife, which destroys the trust in her favor. In so far as she is concerned, the trust is destroyed by her crime, and in consequence a resulting trust in favor of the husband's estate is allowed. If we treat the designation of the beneficiary as akin to a bequest, the same result follows; for a lapsed legacy descends to the heirs of the testator."

Plaintiff in error has cited several cases, which held to the theory that if the assured is murdered by the beneficiary, the liability is terminated; but the great burden of authority, including the cases which we have cited and quoted from, and the cases listed in the authorities we have cited, holds to the contrary doctrine, which seems to us consistent with every principle of right and equity, as well as of law. We cannot reason ourselves away from the rights of the assured. The insurer assumed the risk of death, without any reservation, and death has occurred. The company received every consideration for its unreserved risk, received them from Thomas J. Gentry, who has done no wrong and has received no return. If such rights exist, the law does not strike down the rights of an innocent person, but finds a way, if one there be, to sustain these rights.

Plaintiff in error contends that, to hold that the liability does not cease, but vests in the estate of the assured, would be to hold that the law reads this contingency into the original contract, and that this would be putting a premium upon murder and contrary to public policy. The Supreme Court of Illinois, in the case of Supreme Lodge of Knights and Ladies of Honor v. Menkhausen, 209 Ill. 277, 70 N. E. 567, 65 L. R. A. 508, 101 Am. St. Rep. 239, upon a similar contention, said:

"The only reason in favor of appellant's contention that seems to us of weight is found in the fact that the beneficiary might be incited to commit murder by the fact that, if unable to collect the benefit himself, it would be payable to some other person or persons in whose welfare he was interested. Human experience teaches that those willing to commit murder and assume the risk of punishment for the benefit of others are so few in number that consideration thereof becomes well-nigh inconsequential. But, even were it otherwise, if the rule suggested by appellant were established, it is perceived that the society would then profit by the murder, and an incentive be created for the destruction of the life of the insured that the interest of the insurer might be advanced."

It is thus seen that the rule, contended for by plaintiff in error, would be just as susceptible of perversion as the rule it contends against, and, in addition, would be too harsh for application by equity, in that it would harshly eliminate from consideration the rights of an assured person, who is without wrong.

It happens that, in this case, if the insurance money is adjudged to the administrator of the assured, Alverta B. Gentry will inherit a part of it as his heir, if it is not otherwise disposed of by the administrator; for, under the laws in force at the time of the murder, her criminal act would not bar her rights of inheritance. But, this coincidence cannot interfere with the reason of the general rule. We are of the opinion that, when, by her act of murder, Alverta B. Gentry forfeited her rights as beneficiary under this contract of insurance, a resulting trust arose by operation of law in favor of the estate of the assured, and that the administrator has properly recovered judgment for the insurance.

5. The last proposition of plaintiff in error is that the lower court erred in rendering judgment for intervener and in overruling its motion for a new trial; but this proposition involves only the matters hereinabove considered.

The judgment of the lower court is affirmed.

By the Court: It is so ordered.