## National Life Ins. Co. of Montpelier, Vt., v. Hood's Adm'r.

(Decided Feb. 18, 1936.)

As Modified on Denial of Rehearing June 9, 1936.

BRUCE & BULLITT, WM. MARSHALL BULLITT and ROBERT L. BLACKWELL and C. C. CRABTREE for appellant.

GEO, J. ELLIS, JR., and A. J. THOMPSON for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER

Affirming.

The appellant insured the life of Gilbert Hood by two identical policies of $1,000, issued January 1, 1925. His wife, Irlie Hood, was designated as the beneficiary in each. She and one Elmore killed him in July, 1933, and were convicted of the crime. On August 1, 1933, Irlie Hood assigned her interest in the insurance to Lawrence & Carter, attorneys. Flossie Elmore sued her for alienation of affections and caused the insurance company to be served as garnishee. In this suit brought by Lawrence & Carter to recover under the policies, not only Flossie Elmore, but the administrator of Gilbert Hood's estate and his five children as his heirs, claimed the right to the proceeds. The insurance company denied liability in excess of $246.18, the cash surrender value of the policies, plus $100 "reversionary additions" thereto, less $109.65 indebtedness against the insurance, or a net amount of $233.24. Irlie Hood by answer confirmed her assignment to Lawrence & Carter and joined their efforts to collect. The court, with the Honorable E. H. Smith presiding as a special judge, rendered judgment for the administrator and dismissed the claims of the other parties. The appeal is brought only by the insurance company against the administrator. The others have not appealed.

The contention of the appellant is in the main twofold, namely: (1) That the death of the insured at the hands of the beneficiary was not a risk covered by the policy, the exclusion being by implication; and (2) that the estate cannot recover the face value because the beneficiary receives a portion of it as a distributee.

We have not had a case of this character. There is no difference of opinion among the courts that a beneficiary cannot recover the insurance when he feloniously kills the insured, irrespective of the purpose. It would be abhorrent to justice for the law to aid a malefactor to enrich himself by the commission of murder. 14 R. C. L. 1228; 37 C. J. 576; Couch, Cyclopedia of Insurance Law, sec. 342; Cooley, Briefs on Insurance, p. 5227; Johnston v. Metropolitan Life Insurance, Co., 85 W. Va. 70, 100 S. E. 865, 7 A. L. R. 823; Slocum v. Metropolitan Life Insurance Co., 245 Mass. 565, 139 N. E. 816, 27 A. L. R. 1517; Smith v. Todd,

155 S. C. 323, 152 S. E. 506, 70 A. L. R. 1529; State of West Virginia v. Phoenix Mutual Life Insurance Company, 114 W. Va. 109, 170 S. E. 909, 91 A. L. R. 1482; Mutual Life Insurance Company v. Armstrong, 117 U. S. 591, 6 S. Ct. 877, 29 L. Ed. 997. The assignee of such a beneficiary has no better claim. Equitable Life Assurance Society v. Weightman, 61 Okl. 106, 160 P. 629, L. R. A. 1917 B, 1210; Johnston v. Metropolitan Life Insurance Company, supra; Annotation, 91 A. L. R. 1487. One undertaking to subject the proceeds to the payment of an obligation of the beneficiary stands in the same capacity.

So far as we are aware, no insurer has been relieved of its contract obligation to pay those who were entitled to the insurance money upon the failure. of the named beneficiary to recover. It is commonly stated that the basis for this conclusion is public policy. It is one of the law's fundamental maxims that:

> "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime."

The cases have looked toward the beneficiary. The appellant directs our thought toward the insurer, and argues that the true basis of decision is that the law implies a provision in the policy exempting that cause of death from the risk assumed. But that path of approach brings us to the same goal. The terms of the policy—drawn perhaps without exception by the insurer—measure, the obligations and rights of the parties, subject only to the terms of the common law or the statutes pertaining thereto. These policies at bar contain an unconditional and unqualified promise to pay to the beneficiary specified the sum insured, less any indebtedness due the company, upon receipt of proofs of death. This promise is fortified by stipulations that the policy and application "constitute the entire contract between the parties," and that it "shall be incontestable," after it shall have been in force two years, except for nonpayment of premiums. Of some pertinence on this point is the provision that upon the predecease of the beneficiary her interest "shall vest in the insured unless otherwise provided

by" the policy. The undertaking was to pay the indemnity for death, however caused. The contract was in force and was for the benefit of somebody; manifestly, it cannot be for the benefit of the insurance company. We know of no law that authorizes a court writing into it the exemption contended for. The contract might have contained it, but did not. Annotation, 91 A. L. R. 1490.

Appellant rests its point upon analogous law. It cites cases with their reasoning which relieve insurers from liability where the insured committed suicide while sane, or was legally executed for the commission of a crime, or in a fire risk where the insured willfully burned the property. It may be observed, parenthetically, that the courts are by no means agreed that an insurer is relieved of liability where the insured was legally executed. Annotations, 35 A. L. R. 1482, 36 A. L. R. 1250. The analogy is only in the principle sometimes enunciated that such an exemption is an implied condition and outside the contemplation of either party to the contract that the company should be liable upon its promise to pay at the option of the insured to bring about the occurrence upon which payment would be made, or that the insured himself might precipitate the event upon the happening of which liability arose. It appears this point of implied exemption was made and denied in State of West Virginia v. Phoenix Mutual Life Insurance Company, supra. Generally, the decisions of this class are rested upon the broader ground of public policy in two aspects. One already adverted to is that which prevents the beneficiary from recovering where he has wrongfully killed the insured, namely, profiting by his own violent act; and the other upon principles of good morals and injury to the public. The law would not sanction a provision that a beneficiary may collect even though he killed the insured, this upon the plain principles of public policy. Ritter v. Mutual Life Insurance Co., 169 U. S. 139, 18 S. Ct. 300, 42 L. Ed. 693; Burt v. Union Central Life Insurance Co., 187 U. S. 362, 23 S. Ct. 139, 47 L. Ed. 216.

The analogy between the cases fails in an important particular. The wrong, with the consequent acceleration of liability, was not committed by the in-

sured person—not by one of the parties to the contract. Thus if incendiarism was by some one else without the consent or connivance of the insured, recovery is not barred. Weiner v. St. Paul F. & M. Ins. Co., 124 Misc. 153, 207 N. Y. S. 279. The contract was with Gilbert Hood, the husband. He did no wrong. He kept his covenants, express and implied. Death by a murderous assault was an accident so far as the insured was concerned. 14 R. C. L. 1260; American Acc. Co. v. Carson, 99 Ky. 441, 36 S. W. 169, 18 Ky. Law Rep. 308, 34 L. R. A. 301, 59 Am. St. Rep. 473; Kascoutas v. Federal Life Insurance Co., 193 Iowa, 343, 185 N. W. 125, 22 A. L. R. 294. The policy provided that the "right to change the beneficiary has been reserved." A beneficiary has no vested right in the policy before the insured's death. Slocum v. Metropolitan Life Insurance Co., supra; Smith v. Todd, supra; Farley v. First National Bank, 250 Ky. 150, 61 S. W. (2d) 1059. As is suggested in Equitable Life Assurance Society v. Weightman, supra, the insured had rights under these policies which could not be obliterated without his consent or fault. We do not conceive the law to be that those rights could be diminished or destroyed by the action of another, even though she be named as a revocable beneficiary.

As stated earlier, the appellant concedes liability for the value of the policy at the time of Hood's death, which was $346.18, less the amount borrowed. The only authority cited in support of this conception is Thacker's Adm'r v. Metropolitan Life Insurance Company,[1] in the United States District Court for the Western District of Kentucky, in which it appears the beneficiary had murdered the insured. The opinion, according to the statements in the brief, rests upon the idea that the insured's untimely death worked a legal surrender of the policy; that all the property he had in it was the surrender value; and that the act of the beneficiary should not be allowed to destroy that right passing to his estate. We can hardly follow the reasoning. The terms of the contracts, as we have said, measure the rights of the parties. As stated in Supreme Lodge, K. & L. of H. v. Menkhausen, 209 Ill. 277, 70 N. E. 567, 568, 65 L. R. A. 508, 101 Am. St. Rep. 239:

[1]Memorandum decision.

"In the absence of a contract to that effect, public policy will not permit the society to appropriate unto itself the fund which it has agreed to pay, merely because the life of the insured has been unlawfully taken."

The insured had a right to have the face values paid to some one at his death. He had bought that property. It was an asset of his estate. It was specifically provided that should the designated beneficiary predecease him, and he not name another, the proceeds went to his estate. She destroyed her right of expectancy, but that could not void the company's promise to pay the insurance at all events. It had agreed that it would not raise a question as to its liability if Hood kept his policy alive for two years or more.

We pass to the question whether or not the company is absolved from payment of insurance to the estate because the beneficiary will share as the insured's widow in its distribution. The contest here is between only the company and the administrator.

The law forfeits the widow's rights under the contract made for her benefit. It withholds the help she seeks to enable her to recover. At the same time it requires payment by the company, for the contract itself was not abrogated. We may put aside cases of fraternal or mutual benefit societies whose insurance contracts generally designate substituted classes of beneficiaries. Under the condition present here, the inability of the named person to recover constitutes a failure of a specific beneficiary. Where there is no alternate beneficiary or controlling statute, a trust arises by operation of law in favor of the estate of the insured, by virtue of which his personal representative is entitled to recover. 2 Joyce Insurance, sec. 833; Couch, Cyclopedia of Insurance Law, sec. 342; 14 R. C. L. 1228; Johnston v. Metropolitan Life Insurance Co., supra; Slocum v. Metropolitan Life Insurance Co., supra; Smith v. Todd, supra; State of West Virginia v. Phoenix Mutual Life Insurance Co., supra. Those authorities will lead to many others. The trust fund doctrine is questioned here as unsound because not sustained by its apparent origin, namely, the English case of Cleaver v. Mutual Association, 1 Law Rep., Q. B. Div. 147, and Schmidt v. Life Asso-

ciation, 112 Iowa, 41, 83 N. W. 800, 51 L. R. A. 141, 84 Am. St. Rep. 323. The same challenge was offered in State of West Virginia v. Phoenix Mutual Life Insurance Co., supra, and effectually answered upon reason and authority. However, the doctrine has not received universal approval, and recovery by an estate is placed upon other grounds regarded as better, such as that the policy is to be read as naming no beneficiary and the proceeds, therefore, became a part of the estate of the insured. See notes 91 A. L. R. 1488; Merrity v. Prudential Insurance Co., 110 N. J. Law, 414, 166 A. 335.

Counsel for appellant point out that the cases relied upon by the appellee as showing the right of the estate to recover notwithstanding participation by the guilty beneficiary are to be distinguished because they involved contracts either of fraternal or mutual benefit societies, or were in states, such as Massachusetts, where by statute one who murders his or her spouse forfeits all interest in the estate. There are many cases which do come within the present situation where, under the Kentucky law, such a guilty wife does not forfeit her interest in her husband's estate. Cooley's Briefs on Insurance, p. 5229; Equitable Life Assurance Society v. Weightman, supra; Kascoutas v. Federal Life Insurance Co., supra; Smith v. Todd, supra; In re Carpenter's Estate, 170 Pa. 203, 32 A. 637, 29 L. R. A. 145, 50 Am. St. Rep. 765; New York Life Insurance Co. v. Davis, 96 Va. 737, 32 S. E. 475, 44 L R. A. 305; Welch v. Travelers' Ins. Co. (Sup.) 178 N. Y. S. 748; Murchison v. Murchison (Tex. Civ. App.) 203 S. W. 423; Inter-Southern Life Ins. Co. v. Butts, 179, Ark. 349, 16 S. W. (2d) 184; Meyer v. Johnson, 115 Col. App. 646, 2 P. (2d) 456; Merrity v. Prudential Insurance Co., supra; National Benefit Life Ins. Co. v. Davis, 38 Ohio App. 454, 176 N. E. 490.

It is of interest to note some unusual decisions along this line.

The West Virginia court denies a recovery by the estate of a murdered man when his sole distributee under the statute is the widow who feloniously killed him. Johnston v. Metropolitan Life Insurance Co., supra; Wickline v. Phoenix Mutual Life Insurance Co., 106 W. Va. 424, 145 S. E. 743. And in McDonald

v. Mutual Life Insurance Company, 178 Iowa, 863, 160 N. W. 289, it was held no recovery could be had by the administrator where it appeared that the insured's parents, who had aided in procuring an illegal operation upon the insured resulting in her death, were sole heirs. The sequel of the Wickline Case was a suit by the state of West Virginia to escheat the proceeds of the policy as derelict and without a rightful owner. But the right of escheat was denied because the state was an entire stranger to the contract, had no equity in the transaction, and suffered nothing from which it should be relieved. State of West Virginia v. Phoenix Mutual Life Ins. Co., supra. But it was not held in any of the cases that the company was absolved of liability.

Directly contrary to the West Virginia court, it was held in the Texas case of Murchison v. Murchison, supra, the surviving wife as sole distributee of the estate of her husband was entitled to the estate, which had the right to the proceeds of his life insurance in which she was named beneficiary notwithstanding she had killed him for the purpose of obtaining the money; the court expressing regret that the Legislature had failed to provide against so great injustice.

In De Zotell v. Mutual Life Insurance Co., 60 S. D. 532, 245 N. W. 58, the court declared that it would be better that the insurance company be excused from any payment whatsoever than to permit the beneficiary to benefit even indirectly as an heir, but the right of recovery by the administrator was sustained provided that none of the proceeds should go to the beneficiary by way of descent and distribution, upon the same grounds of public policy that denied the beneficiary the right of enjoyment in the first instance.

The case of Spicer v. New York Life Ins. Co. (D. C.) 263 F. 764, affirmed (C. C. A.) 268 F. 600, involved a policy insuring Spicer and his wife, in favor of the survivor. It was held since the contract was to pay no other, it could not be recovered by the husband who had murdered his wife. Aside from its isolation, the case is not of influence, because each insured became bound by the conduct of the other and obligated himself for the performance of the whole undertaking.

In Illinois Bankers Life Association v. Collins,

341 Ill. 548, 173 N. E. 465, it was held the proceeds were not to be regarded as a part of the general assets of the estate of the insured, but should go directly to his heirs to the exclusion of the widow.

An Oklahoma statute (section 1616) bars one from taking the proceeds of a policy if he takes, or causes or procures the taking of, the life of the insured; but this does not prevent the administrator from recovering. Goodwin v. Continental Casualty Co. (Okl. Sup.) 53 P. (2d) 241.

It does not seem to us that any statute of descent and distribution enters into the question of the liability and extent of liability of the insurance company. That arises from its express contract. The beneficiary's forfeiture of right arises from the common law. Participation in the distribution of an estate is by virtue of a statute.

In Eversole v. Eversole, 169 Ky. 793, 185 S. W. 487, L. R. A. 1916E, 593, the right of a widow to share in the estate of her husband, whom she had feloniously killed, was involved. The court held that she was entitled to her distributable share as provided by the statutes. It does not appear that any proceeds of insurance was a part of the estate. As to whether or not in the instant case the widow may share in the distribution of the proceeds of the policy after it shall go into the hands of the administrator, we do not decide, for, as stated, the case before us is between the insurance company · and the administrator alone, and concerns only the extent of the liability of the company under its contract.

Our conclusion is that there was no implied exclusion from the policy of the risk of the insured being killed by the beneficiary and that the insurer is liable to the administrator of the estate of the insured for the amount claimed.

The judgment is therefore affirmed.