# Wytheville.

## Drewry and Others v. Bank of Sedley.

### June 11, 1925.

Argued before Judge Chichester took his seat.

1. Fraudulent and Voluntary Conveyances—*Declarations of Grantor and Grantee.*—In a suit to set aside a deed as in fraud of creditors, statements in the testimony of the grantor and grantee, so far as they are adverse to their interests, are receivable as admissions on their part.

2. Fraudulent and Voluntary Conveyances—*Evidence—Unwise and Foolish Loans of Grantee to Grantor—Case at Bar.*—In the instant case, a suit to set aside a deed as in fraud of creditors, while it looked unreasonable that the grantee should have loaned the grantor $2,000.00 without security of any kind when the grantor already owed him $5,500.00, much of which had been standing for several years, without curtailment or even the payment of interest, yet the law permits a man to manage his business affairs in his own way, and will not brand that management as fraudulent merely because it may appear to others as unwise or foolish, especially where, as in the instant case, the grantee testified that his main object was to get hold of the place in question.

3. Fraudulent and Voluntary Conveyances—*Evidence of Fraud—Failure to Keep Books—Case at Bar.*—In the instant case, a suit to set aside a deed as in fraud of creditors, reliance was had on the failure of the parties, farmers, to keep books and the failure of the grantee to render statements, as proof of fraud. But the grantee testified that he told the grantor when he purchased lumber from him what the bill amounted to, and set it down in a memorandum book which he carried in his pocket, and that he took due bills or notes for the amounts loaned from time to time, and that he had several of the latter at the time of the settlement, when he took a note for $7,500.00 to close up all past transactions, the surrender of this note being part of the consideration for the deed in question.

   *Held:* That the failure to keep books and render statements under the circumstances was not evidence for fraud.

4. Fraudulent and Voluntary Conveyances—*Evidence of Fraud—When Grantor Leased Property from Grantee.*—In a suit to set aside a deed as

in fraud of creditors the fact that grantee leased the land to grantor was not evidence of fraud, the transaction being a perfectly natural one under all the circumstances of the case, and the amount of rent being exactly six per cent on the purchase price of the land.

5. FRAUD AND DECEIT—*Presumption of Fraud—Proof of Fraud—Preponderance of Evidence—Burden of Proof.*—The law never presumes fraud, though it may often be inferred from facts and circumstances. The presumption is always in favor of innocence and honesty. Fraud may be established by circumstantial evidence as well as by direct testimony, but, in either case, it must be shown by clear and satisfactory evidence. It will not be inferred from doubtful evidence or circumstances of suspicion. While it is not necessary to prove it beyond a reasonable doubt, the judicial mind should not be left in doubt or uncertainty as to where the preponderance of the evidence is. There must be a clear preponderance of the evidence tending to prove fraud before it will be inferred. It is usually said that evidence of fraud must be clear and satisfactory. And the burden is on the party alleging its existence.

6. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Consideration of Deed—Evidence Held not to Show Fraud—Case at Bar.*—In the instant case, a suit to set aside a deed as fraudulent, the consideration of the deed was the assumption by the grantee of $7,500.00 of liens on the land, and the surrender to the grantor of his note for $7,500.00 held by the grantee. The grantor and the grantee testified, and were not contradicted, that the consideration of the note for $7,500.00 was sundry purchases of lumber by the grantor from the grantee, sundry purchases of peanuts by the grantor from the grantee, and various sums of money loaned the grantor by the grantee. Neither of the parties kept books, and they could not recall the times at which the different loans were made, or how much lumber was purchased or its price, and there was a slight conflict in the evidence as to the purchases of peanuts. Neither principal nor interest on any of the loans had been paid, when the grantee took the note for $7,500.00. After the deed the grantor leased the land from the grantee.

*Held:* That the fraud alleged was not established with that certainty and clearness which the law requires.

Appeal from a decree of the Circuit Court of Southampton county. Decree for complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*R. E. L. Watkins, Jas. H. Corbitt* and *Marshall Andrews,* for the appellants.

*John N. Sebrell, Jr.,* and *Chas. W. Davis,* for the appellees.

Burks, J., delivered the opinion of the court.

This is a suit in equity by the Bank of Sedley to set aside as fraudulent a deed from J. B. Drewry to Yancey Hundley, conveying two tracts of land in Southampton county. The trial court set aside the deed on the ground that it was made with intent to hinder, delay and defraud the creditors of the grantor in the collection of their debts.

In 1921 Drewry was largely indebted to sundry creditors, and conveyed the two tracts of land aforesaid to Hundley for the consideration of $15,000.00, and gave a deed of trust on practically all of his tangible personal property to a trustee to secure to M. E. Turner a debt of $1,500.00. Hundley and Turner were neighbors and friends of Drewry. The present suit, however, has nothing to do with the deed of trust on the personal property.

The consideration for the deed of Hundley was the assumption by him of $7,500.00 of liens on the land, and the surrender to Drewry of his note for $7,500.00 held by the grantee. It is not alleged or shown that the two tracts of land are worth more than $15,000.00, but it is claimed that Drewry was not indebted to Hundley in any sum, and that the debts assumed were already liens on the land that was more than ample to secure them.

[1] The case is out of the ordinary in that the plaintiff relied almost exclusively upon the testimony of the grantor and the beneficial grantees in the two deeds aforesaid to prove the fraud alleged. The other testimony, to be hereinafter referred to, is of comparatively

little importance.   In the view we take of the case, it is unnecessary to decide how far, if at all, the plaintiff is bound by the statements of the grantor and grantees aforesaid who were examined as witnesses on its behalf. It is sufficient for the present purpose to say that their statements so far as adverse to their interests are receivable as admissions on their part.

The facts as to the consideration of the note for $7,500.00 aforesaid of Drewry to Hundley, as testified to by them and not contradicted by any other witness, are substantially as follows:   Some six or seven years prior to 1922, Drewry bought from Hundley the lumber necessary to build him a dwelling house, one or two barns and other buildings and from time to time thereafter, until 1919, bought other lumber for building purposes from Hundley.   Neither of the witnesses could state how much lumber was purchased at any one time, nor the price thereof, but Hundley put the entire lumber bill at $2,500.00 to $3,000.00.   Hundley also let Drewry have peanuts for planting for several years.   Hundley says four years, and fifteen or twenty bags each year.   Drewry says two years, and ten or fifteen bags each year.   No part of this was paid prior to 1919.   Hundley also loaned Drewry various sums of money in amounts from $100.00 to $600.00 at a time, but neither of the witnesses could recall the times at which the different loans were made, nor the exact amount of any particular loan.   Generally a due bill or note was taken by Hundley at the time the loan was made.   Prior to 1919 no part of the principal or interest on any of these loans had been paid.   In 1919 the indebtedness of Drewry to Hundley for lumber, peanuts and money loaned, with interest on the various sums till time of settlement, amounted to $5,500.00.   At that time Hundley loaned Drewry $2,000.00 in cur-

rency, and took his note or bond, without security of any kind, for the total indebtedness of $7,500.00. Hundley and Drewry were both farmers and kept no books of account, though Hundley says he did make memoranda in a memorandum book which he carried around in his pocket, but which he was unable to produce at the time his deposition was taken. There are some discrepancies between Drewry and Hundley as to the quantity of peanuts furnished by Hundley; as to whether any interest was ever paid by Drewry; as to what statements were ever rendered by Hundley to Drewry; as to when the subject of leasing the farm for 1922 was first mentioned by Drewry to Hundley, and perhaps a few other matters, but there is but little divergence between them on the main facts as to the origin and amount of the indebtedness from Drewry to Hundley.

There is no intimation in the record that Hundley was not abundantly able to make the loans claimed to have been made by him to Drewry. He gave the name of the bank from which he obtained a part of the currency to make the $2,000.00 loan, but no evidence was offered to contradict his statement.

The deed from Drewry to Hundley was made December 21, 1921. He had tenants on his farm in 1920, and they held under the same contracts for 1921 and 1922. He had leased the farm from Hundley for 1922 at $900.00 per year, payable in the fall of that year. Hence, we attach little importance to the testimony of two of these tenants, whose testimony was taken in 1922, before the rent for that year was due, that they had never heard of the sale and conveyance by Drewry to Hundley, and that things went on that year as before. Nor do we attach great importance to the testimony of one of the directors of the plaintiff bank

.as to the quantity of lumber used in the buildings on Drewry farms. He had not seen all of the buildings and his estimate of those he did see was formed from a view obtained by riding along the road near the Drewry home. The only other witness introduced by the plaintiff was the president of the plaintiff bank who testified in 1922 that he was well acquainted with the Drewry farm and had observed no difference in the ownership, occupation or possession of it in the last year or two.

Drewry was largely indebted at the time he made the deed to Hundley. He owed the plaintiff bank $6,486.50, contracted in the last two years. It is not clear from the record what part of this sum was secured, though it is probable that $5,000.00 of it was secured by a deed of trust on the Worrell farm. At all events there was at least $1,400.00 of it for which it held no security. We infer from this and other circumstances, that, although Drewry was financially embarrassed, he still had credit in the community.

Drewry was subjected to a very lengthy and searching cross-examination by counsel for the bank. He did not make a good witness in his own behalf as he frequently repeated questions asked before answering, and thereby appeared to be an unwilling witness. But on the main facts of the case he was corroborated by Hundley. As to other statements made by him, he furnished information from which he could have been contradicted if his statement was not true, but no testimony was offered to contradict him.

[2] A careful consideration of the evidence would probably lead to the conclusion that Hundley had great faith in the ability and willingness of Drewry to pay him; that he dealt with Drewry in a very un-business-like manner; that his method of doing business

was lax even to the verge of being foolish, but it is far from convicting him of being a knave. It looks unreasonable that Hundley should have loaned Drewry $2,000.00 without security of any kind in 1919, when Drewry already owed him $5,500.00, much of which had been standing for several years, without curtailment or even the payment of interest. But the law permits a man to manage his business affairs in his own way, and will not brand that management as fraudulent merely because it may appear to others as unwise or foolish. In the instant case, the dealings of Hundley may not have been so unwise as, at first sight, it appears. Hundley gives his reason for making the $2,000.00 loan, and the same reason probably actuated him in his previous dealings with Drewry. He says: "I had confidence enough in him and thought that he would, and my main object was to get hold of the place. I wanted the farm." His confidence was not misplaced and he did get the farm. He took great risk, but he accomplished his purpose.

[3] Great stress is laid on the fact that the parties kept no books of account of their transactions, and that Hundley rendered no statements. But Hundley says he told Drewry when he got lumber what the bill amounted to, and that he did set it down in a memorandum book which he carried in his pocket, and that he took due bills or notes for the amounts loaned from time to time, and it clearly appears that he had several of the latter at the time of settlement in 1919, when the note for $7,500.00 was given to close up all of their past transactions. After this note was given, Hundley had no occasion to preserve his memorandum book, and it is not surprising that he did not know where it was and did not produce it when he testified. For a like reason, he had no occasion to charge his mind with the dates

and amounts of the due bills or notes given for loans made by him. If his transactions were honest, he had no reason to suppose that this information would be needed in the future. If not honest, he would prob-ably have made or preserved some written evidence to corroborate his oral testimony.

[4] The fact that Hundley leased the land to Drewry for the year 1922 at a rental of $900.00 is not evidence of fraud. The transaction was a perfectly natural one under all the circumstances of the case, and it will be observed that the amount of the rent was exactly six per cent on the purchase price of the land.

[5] The law never presumes fraud, though it may often be inferred from facts and circumstances. The presumption is always in favor of innocence and hon-esty. Fraud may be established by circumstantial evidence as well as by direct testimony, but, in either case, it must be shown by clear and satisfactory evi-dence. It will not be inferred from doubtful evidence or circumstances of suspicion. While it is not nec-essary to prove it beyond a reasonable doubt, the judicial mind should not be left in doubt or uncertainty as to where the preponderance of the evidence is. There must be a clear preponderance of the evidence tending to prove fraud before it will be inferred. It is usually said that evidence of fraud must be clear and satisfactory. *Williams* v. *Lord & Robinson*, 75 Va. 390; *Norris* v. *Lake*, 89 Va. 513, 16 S. E. 663; *New York Life Ins. Co.* v. *Davis*, 96 Va. 737, 32 S. E. 475, 44 L. R. A. 305; *Shoemaker* v. *Chapman*, 112 Va. 612, 72 S. E. 121.

In *Redwood* v. *Rogers*, 105 Va. 158, 53 S. E. 6, it is said: "The charge of fraud is one easily made, and the burden of proving it rests on the party alleging its existence. It may be proved not only by positive and

direct evidence, but by showing facts and circumstances sufficient to support the conclusion of fraud. But however shown, the proof must be clear and convincing and such as to satisfy the conscience of the chancellor, who should be cautious not to lend too ready an ear to the charge. Story's Eq., vol. 1, section 190a; *Herring* v. *Wickham*, 29 Gratt. 628, 26 Am. Rep. 405; *Moore* v. *Ullman*, 80 Va. 307; *Gregory* v. *Peoples*, 80 Va. 355; *Engleby* v. *Harvey*, 93 Va. 440, 25 S. E. 225; *Jordan* v. *Liggan*, 95 Va. 616, 29 S. E. 330; *Alsop* v. *Catlett*, 97 Va. 364, 34 S. E. 48.

We have cited cases merely to support the general principles announced, which are well settled in this jurisdiction. We have not stated the facts in any of the cases cited, because not deemed helpful. The facts of no two cases are identical, and they are rarely similar. This is especially true of cases involving fraudulent conveyances.

[6] Applying the above principles to the facts in the instant case, we do not think the fraud alleged has been established with that certainty and clearness which the law requires. Many of the facts shown are inconsistent with sound business methods and good judgment, but they are not inconsistent with honesty of purpose and fair dealing. If Hundley had kept books in which he had made contemporaneous entries of each of the transactions he had with Drewry, to which they both testified, it would hardly be contended there was any fraud in fixing the consideration of the note for $7,500.00. We do not think that fraud should be imputed to two farmers for failure to keep such books, nor do we think that it should be imputed to them because they could not give dates and amounts of the various items composing the note for $7,500.00. They had closed their dealings by the note given in 1919, and this suit was brought in 1922.

It must be admitted that there are many suspicious circumstances attending the dealings of the parties with each other. The case is a close one and difficult to decide, but there is no middle ground and we must take one side or the other. We are not satisfied that the clear preponderance of the evidence establishes the fraud charged, and for that reason the decree appealed from will be reversed, and an order will be entered in this court dismissing the appellee's bill, and giving costs to the appellant in this court and also in the trial court.

*Reversed.*