# Staunton.

## NEFF, ETC., V. EDWARDS, ETC.

### September 22, 1927.

### Absent, Prentis, P.

1. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Evidence—Declarations of Grantor without Knowledge of Grantee—Case at Bar.*—In the instant case, a general creditor's suit, a deed from one brother to another was attacked as in fraud of creditors. It was asserted by defendants that this conveyance was in payment of an antecedent debt. Interested witnesses for complainant testified that grantor had told them that he did not owe the grantee anything, and that he had fully paid for his land. These statements were denied by the grantor.

   *Held:* That in any event the statements were not binding on the grantee, who was not present and had no knowledge of them.

2. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Consideration for Conveyance—Antecedent Indebtedness.*—An antecedent debt of grantor to grantee constitutes a valuable consideration for a conveyance attacked as in fraud of creditors.

3. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Consideration—Inadequate Consideration—Case at Bar.*—In a general creditor's suit, where a conveyance from one brother to another was attacked as fraudulent, it was contended that the consideration was grossly inadequate. Upon this question, the evidence was in serious conflict, but the preponderance of the evidence of disinterested witnesses was probably in favor of defendants. The price per acre fixed by witnesses for defendants showed that the price paid could not be said to be grossly inadequate. The price paid was $66.00 per acre. One of the witnesses for the complainants said that $30.00 would be a fair price. Five other witnesses for complainants valued the land as high as $100.00 per acre, but three of these witnesses were complainants in the cause, and the other two were antagonistic to defendants.

   *Held:* That upon such testimony it could not be said that the price paid was grossly inadequate.

4. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Grantor's Interpretation of the Language of the Deed.*—In the instant case, a general creditor's suit, where a deed of the debtor was attacked as in fraud of creditors, the interpretation of the grantor of the language of the deed express-

ing the consideration for the conveyance was criticized. The deed was prepared by the grantor himself, who was a plain farmer, and in many respects was inartificially expressed, but his interpretation was substantially the same as that of the creditors.

5. Fraudulent and Voluntary Conveyances—*Evidence to Show Fraud—Grantor and Grantee Brothers—Grantor Insolvent—Case at Bar.*—In a general creditor's suit, a conveyance of the debtor was attacked as fraudulent. The grantor and the grantee were brothers. The grantor was being pressed by his creditors and the preponderance of the evidence showed that his estate was not sufficient to pay all of his debts.

*Held:* That this did not establish fraud.

6. Fraudulent and Voluntary Conveyances—*Evidence to Show Fraud—Concealment and Secrecy of the Transaction—Case at Bar.*—In the instant case, a general creditor's suit, a deed of the debtor was attacked as in fraud of creditors. The validity of the deed was assailed on account of the concealment and secrecy of the transaction. The deed bore date of January 12, 1923, it was acknowledged January 24, 1923, and admitted to record January 26, 1923, and when spread on the deed book the original was sent to the grantee by registered mail at his home in Oklahoma.

*Held:* That the facts that the grantor wrote the deed and advanced the recording fee and that the registered envelope containing the deed bore the return card of the fourteen-year-old daughter of the grantor were insignificant, and were not evidence of concealment of the contents of the public records.

7. Fraudulent and Voluntary Conveyances—*Retention of Possession by Grantor—Grantor and Grantee Brothers—Case at Bar.*—In the instant case, a general creditor's suit, a deed by the debtor to his brother was assailed as in fraud of creditors. It was asserted that the grantor retained possession of the land and used it as his own after the execution and delivery of the deed. This was denied by both the grantor and the grantee. One of the tenants of the land testified that grantor had told him of the conveyance to his brother. If the grantor exercised any acts of ownership over the land, it was not shown that the grantee had any knowledge of it at the time.

*Held:* That if the transaction was a *bona fide* sale of the land, the grantee could permit his brother to live there indefinitely, without rent or charge of any kind, and that the possession of the grantor, under the circumstances, was very slight evidence, if any, of lack of good faith, in making the sale.

8. Fraud and Deceit—*Fraudulent and Voluntary Conveyances—Evidence to Establish Fraud—Fraud to be Distinctly Charged and Proved.*—Fraud is in the nature of a crime, and while it does not require proof beyond a reasonable doubt, it is the established doctrine in this

State that it must be distinctly charged and proved by clear and satisfactory evidence. Doubts as to the preponderance of the evidence will not suffice to avoid a transaction on the ground of fraud.

9. FRAUD AND DECEIT—*Presumption of Innocence.*—The law presumes innocence rather than guilt, and fraud will not be presumed on doubtful evidence or circumstances of mere suspicion.

10. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Knowledge of Grantee of Fraudulent Intent.*—Before a deed of conveyance can be set aside on the ground that it was made with intent to hinder, delay and defraud the creditors of the grantor, not only must the fraudulent intent of the grantor be shown, but it must also be made to appear that the grantee had notice or knowledge of such fraudulent intent.

11. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Bona Fide Purchaser—Fraud of Grantor.*—A *bona fide* purchaser, that is, one who, without knowledge or notice of grantor's intent to defraud creditors, actual or constructive, and who has not been put on such inquiry as would lead to knowledge or notice, and has paid the consideration, will be protected, regardless of the fraud of his grantor.

12. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Relationship of the Parties—Badges of Fraud.*—Relationship is not a badge of fraud, and there is no law which forbids persons standing in near relationship of consanguinity, affinity, or business, from dealing with each other, or which requires them to conduct their business with each other differently from the manner in which they deal with other persons, though, when fraud is charged, their dealings with each other will be closely scrutinized, as they may strengthen a presumption arising from other circumstances.

13. BANKRUPTCY AND INSOLVENCY—*Fraudulent and Voluntary Conveyances—Preferences.*—In the absence of a statute, State or Federal, a debtor has the right to prefer one creditor to another. Giving such a preference is not fraudulent, though the debtor be insolvent, and the creditor is aware at the time that it will have the effect of defeating the collection of other debts. This is not hindering or delaying creditors, within the meaning of the statute. It does not deprive other creditors of any legal right, for they have no right to a priority.

14. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Stare Decisis—Value of Precedents.*—Precedent in cases of fraudulent and voluntary conveyances is of but little aid as there is such a variance in the facts, and each case must be determined upon its own facts and circumstances.

15. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Evidence to Establish Fraud—Clear and Satisfactory Evidence Required—Case at Bar.*—In the instant case, a general creditor's suit, in which a deed from the debtor to his brother was assailed as being in fraud of creditors, it

was held that while the transaction disclosed some suspicious circumstances, fraud was not established by the clear and satisfactory evidence required by law; that the deed was supported by a valuable and adequate consideration; that, if the conveyance was made with a fraudulent intent on the part of the grantor, it was not shown that the grantee had knowledge of such intent; and that the relationship of the parties and the fact that the grantee in the deed acquired preference over other creditors of the grantor did not defeat the rights of the grantee as a *bona fide* purchaser.

Appeal from a decree of the Circuit Court of Lee county. Decree for complainants. Defendants appeal.

*Reversed.*

The opinion states the case.

*W. L. Davidson* and *B. H. Sewell,* for the appellants.

*E. W. Pennington* and *Pennington & Cridlin,* for the appellees.

BURKS, J., delivered the opinion of the court.

In January, 1901, Jefferson Neff, of Lee county, Virginia, died intestate, seized and possessed of real and personal property in said county, and left surviving him six heirs, three of whom were sons. Of these three, two (Floyd M. C. and Ransom S.) were non-residents of the State. The other son, William E., resided in Lee county.

By deed bearing date March 7, 1901, Ransom S. conveyed his one undivided sixth interest in his father's land to William E. Neff, for the consideration of $525.00, receipt of which is acknowledged in the deed. By deed bearing date April 24, 1901, Floyd M. C. conveyed his undivided one-sixth to William E. Neff, for the consideration of $525.00, of which $200.00 was

paid in cash, and for the remaining $325.00 the deed recites that William E. Neff gave his note to Floyd M. C.

Upon the division of the lands of Jefferson Neff, there was assigned to William E. Neff for the three shares held by him, 160 acres, of which he subsequently conveyed four acres to H. C. Campbell, thus leaving him 156 acres. The share of each distributee in the personal estate amounted to $80.00 or $86.00.

About the time of these transactions, Ransom S. loaned to Floyd M. C. $325.00, and also advanced him $400.00 for a hospital bill for his daughter, and Floyd M. C. transferred to him the note of William E. Neff for $325.00 and his interest in the personal estate of his father, and directed the administrator of Jefferson Neff to pay the latter to him. On January 1, 1912, William E. Neff executed to Ransom S. his bond for $599.00, which was composed of the $325.00 and the interest thereon and about $65.00 from his share of the personal estate. No question is raised as to the entire solvency of William E. Neff at that time.

On November 15, 1921, Ransom S. wrote to his brother, William E., requesting him "to give me renewal, cash, note or something," and on January 1, 1922, William E. Neff executed and delivered to Ransom S. his note for $958.00, payable four months after date, which was just the amount of the old note for $599.00, with interest thereon to the date of the last named note. The two brothers were in regular correspondence with each other, and thereafter Ransom S. from time to time requested the payment of the note for $958.00, but William E. had become financially embarrassed and was unable to pay it, and it was agreed between them that William E. should convey to Ransom S. a certain boundary of land in satisfaction of the note. Pursuant to this agreement, William E.

and his wife, by deed bearing date January 12, 1923, conveyed to Ransom S. and his wife a boundary of land, supposed to contain about twenty-five acres. The consideration of the deed was the amount due on the note for $958.00 and interest, and the assumption by Ransom S. of a proportionate part of a mortgage which William E. had in the meantime placed on the whole tract in favor of the Federal Land Bank of Baltimore. This the parties estimated at $500.00. The price fixed on the land was $66.00 per acre, making the whole purchase price $1,500.00. The old debt was estimated at $1,000.00, which, with the $500,00 to be paid to the bank, made the purchase price for the land. This deed, dated January 12, 1923, was acknowledged January 24, 1923, and admitted to record in Lee county January 26, 1923, and after it was spread on the record the original was sent to Ransom S., at his home in Oklahoma, by registered mail, and he has kept it ever since. The note of $599.00, endorsed "notes have been received," and the note for $958.00 with the word "paid" across the face, were produced at the trial and filed with the deposition of William E. Neff.

The deed of January 12, 1923, from William E. Neff and wife to Ransom S. Neff and wife is assailed by lien creditors of William E. Neff on the ground that it was made with intent to hinder, delay and defraud his creditors, and to establish this fact they make the following charges: That the grantor and grantee in the deed are brothers: that William E. Neff, the grantor, was insolvent; that there was no consideration for the deed, or, if there was any, it was so grossly inadequate as to shock the conscience; that the making of the deed was kept secret; and that the grantor remained in possession after the execution and delivery of the deed. It is also charged that the grantee, Ransom S., had

knowledge of and participated in the fraud of the grantor.

The real and substantial contest is over the consideration of the deed. If this be satisfactorily established, and it appears that Ransom S. Neff simply acquired a preference over other creditors, with no intention to otherwise prejudice other creditors, then the remaining charges sink into insignificance.

There is no suggestion in the record that William E. Neff was insolvent, or financially embarrassed, on January 2, 1912, when the bond for $599.00 was given. The origin, history and consideration of that bond are **fully given** by the appellants in their testimony, and is not contradicted by any evidence for the appellees. It is simply suggested that it was never intended to be paid. When this bond was merged in the note for $958.00, it was marked,"Notes have been received. R. S. Neff," and surrendered to Wm. E. Neff. It was produced at the trial, and there is no evidence of its lack of genuineness, or that the date of its execution is not correctly stated. It had been running ten years lacking two days when the last note was given, and the interest thereon for that time was $359.20, which added to the principal of $599.00, makes $958.20, almost the exact amount of the note of January 1, 1922. These figures confirm the testimony of appellants as to the consideration of the note for $958.00, and that it was a mere continuation of the preexisting debt. When the note was paid by the conveyance of the land, Ransom S. Neff wrote across the face of it in pencil the word "paid," signed his name to it and surrendered it to William E. Neff, who filed it with his deposition in the case.

[1] The deed from Floyd M. C. Neff to William E. Neff shows that the balance of $325.00, due to Floyd

M. C. from William E. Neff, was evidenced by the note of the latter to the former, and while no express assignment of this note to Ransom S. is shown, both Ransom S. and William E. testify that it was agreed between them and Floyd M. C. that the amount thereof should be paid by William E. to Ransom S. There is no evidence to the contrary except the statement of seven witnesses, most of them interested, that William E. had told them that he did not owe Ransom S. anything, and had fully paid for his land. These statements are denied by William E. and are in no event binding on Ransom S., who was not present and had no knowledge of them. Floyd M. C. is dead.

[2] The antecedent debt was a valuable consideration for the conveyance. *Evans, Tr.* v. *Greenhow*, 15 Gratt. (56 Va.) 153; *Rinehart* v. *McArthur*, 123 Va. 556, 569, 96 S. E. 829.

[3] Again, it is said that if there was any consideration it was grossly inadequate. Upon this subject, the evidence is in serious conflict, with probably the preponderance of the evidence of disinterested witnesses in favor of the appellants.

Even if the boundary contained thirty-four acres instead of twenty-five, about which there is conflict, the price per acre fixed by witnesses for the appellants shows that the price paid could not be said to be grossly inadequate. Furthermore, one of the witnesses called by the appellees on a different question, in speaking of the value of the entire farm, says: "Thirty dollars would be a very fair price." This would be $1,020.00 for thirty-four acres. Of the five others who value the land as high as $100.00 per acre, three of them are complainants in the suit, another admitted that his feelings towards William E. Neff were "not as good as neighbors' feelings ought to be between one another,"

and the other was asked by counsel for appellees if the statements about which he testified "were all made while you and Neff were on friendly terms," thereby intimating that they had not always been on friendly terms. Upon such testimony it cannot be said that the price paid was grossly inadequate.

[4] There is some criticism of the interpretation placed by William E. Neff on the language of the deed expressing the consideration for the conveyance of twenty-five acres. The deed was prepared by William E. Neff himself, who is a plain farmer, and in many respects is inartificially expressed, but his interpretation is substantially the same as that of the creditors who say that the twenty-five acres were conveyed "for the consideration of $1,000.00, and the payments in proportion of acreage of a deed of trust to the Federal Land Bank of Baltimore, which deed originally was for $3,300.00, but upon which certain small payments have been made."

[5] It is conceded that the grantor and grantee in the deed were brothers, that the grantor was being pressed by his creditors, and that the preponderance of the evidence shows that his estate is not sufficient to pay all of his debts. But this does not establish fraud.

[6] The validity of the deed for twenty-five acres is also assailed on account of the "concealment and secrecy of the transaction." We are unable to find any evidence of it in the record. The deed was acknowledged January 24, 1923, and admitted to record January 26, 1923, and when spread on the deed book the original was sent to Ransom S. Neff by registered mail at his home in Oklahoma. The fact that William E. Neff wrote the deed and advanced the recording fee, if he did advance it, and that the regis-

tered envelope containing the deed bore the return card of the thirteen or fourteen year old daughter of William E. Neff are insignificant, and are not evidence of concealment of the contents of the public records.

[7] Finally, it is said that William E. Neff retained possession of the land and used it as his own after the execution and delivery of the deed. This is denied by both Ransom S. Neff and William E. Neff, who state that the land was rented for a part of the crop for 1923, and was not rented at all for 1924, and that William E. gave to Ransom S. his note for $30.00 for what he realized from the crops of 1923, and for $20.00 for such use of the land as he had for 1924.

The original bill in this case was filed in April, 1923, but did not assail the validity of the deed to the twenty-five acres because the complainant stated that he did not know of its existence. On August 3, 1923, a number of creditors filed a petition in the cause assailing this deed as fraudulent, and the complainant amended his bill and adopted the charges of the petition. There had been very little time between the date of the deed and August 3, in which William E. Neff could have exercised any very serious acts of ownership over the land, but appellees undertake to show that he leased a part of the land to two tenants for the year 1923, without disclosing the ownership of the twenty-five acres by Ransom S. Neff, and without any visible boundary line between the twenty-five acres and the residue of the tract, and that he used the crops on the two parcels indiscriminately as his own. One of these tenants, however, states that he rented about two or two and a half acres of the twenty-five about the last of March, 1923, and that "something like a month and a half" afterwards William E. Neff told him "he would have to rent that much in his

brother's name as he had let his brother have that part of the land." This was manifestly before the deed was assailed. The same witness also testified as follows: "Q. Why did you put part of the corn in the crib, a load and a half or nearly two loads?" "A. He told me to put that much of the corn in the crib for his brother."

If William E. Neff exercised any acts of ownership over the land after the execution of the deed, it is not shown that Ransom S. had any knowledge of it at the time.

It is true that William E. Neff remained in the dwelling house, the only habitable dwelling on the tract, but what was more natural than that Ransom S., after he had gotten his debt secured, should have permitted William E. and his family to remain in the dwelling house until he could make other satisfactory arrangements? If the transaction was a *bona fide* sale of the twenty-five acres to Ransom S., he could permit his brother to live there indefinitely, without rent or charge of any kind, if he chose. The possession of William E. Neff, under the circumstances, was very slight evidence, if any, of the lack of good faith, in making the sale. Ransom S. might well feel grateful to him for giving him the preference over his other creditors.

[8-11] Fraud is in the nature of a crime, and while it does not require proof beyond a reasonable doubt, it is the established doctrine in this State that it must be distinctly charged and proved by clear and satisfactory evidence. Doubts as to the preponderance of the evidence will not suffice to avoid a transaction on the ground of fraud. The law presumes innocence rather than guilt, and fraud will not be presumed on doubtful evidence or circumstances of mere suspicion. *New York Life Ins. Co.* v. *Davis*, 96 Va. 739, 32 S. E. 475,

44 L. R. A. 305. Not only so, but before a deed of conveyance can be set aside on the ground that it was made with intent to hinder, delay and defraud the creditors of the grantor, not only must the fraudulent intent of the grantor be shown, but it must also be made to appear that the grantee had notice or knowledge of such fraudulent intent. A *bona fide* purchaser,—that is, one who, without such knowledge or notice, actual or constructive, and who has not been put on such inquiry as would lead to knowledge or notice, and has paid the consideration, will be protected, regardless of the fraud of his grantor. 2 Minor Real Prop., section 1123; *Hutcheson* v. *Savings Bank*, 129 Va. 281, 289, 105 S. E. 677.

[12, 13] In *Johnson* v. *Lucas*, 103 Va. 36, 48 S. E. 497, it was held that the fact that an insolvent debtor confesses judgment in favor of his father-in-law who immediately institutes a suit in chancery to enforce his judgment, and causes his debtor's land to be sold for the judgment and purchases the land at less than the amount of the judgment, is of little or no value in making out a case of fraud against the parties, and that relationship is not a badge of fraud; that there is no law which forbids persons standing in near relationsip of consanguinity, affinity, or business, from dealing with each other, or which requires them to conduct their business with each other differently from the manner in which they deal with other persons, though, when fraud is charged, their dealings with each other will be closely scrutinized, as they may strengthen a presumption arising from other circumstances. In the same case it is said that "In the absence of a statute, State or Federal, a debtor has the right to prefer one creditor to another. Giving such a preference is not fraudulent, though the debtor be insolvent, and the creditor is aware at the time that it will have the effect of defeat-

ing the collection of other debts.    This is not hindering or delaying creditors, within the meaning of the statute. It does not deprive other creditors of any legal right, for they have no right to a priority.    As was said by Judge Burks in *Williams* v. *Lord & Robinson*, 75 Va. 390, 402, since 'a debtor has the right to pay one creditor in preference to another, so he may, without the imputation of fraud, secure one creditor to prevent another from gaining an advantage.'    *Lucas, Sergeant, etc.*, v. *Claffin & Co.*, 76 Va. 269, 275–279, and cases cited."

[14] There are many cases in this jurisdiction on the subject of fraudulent conveyances, some upholding and others setting aside the conveyance, but precedent in such cases is of but little aid as there is such a variance in the facts, and each case must be determined upon its own facts and circumstances.    We have quoted from the holding in *Johnson* v. *Lucas, supra,* because in its facts it most nearly approaches the instant case. Many of the other cases are reviewed in *Hutcheson* v. *Savings Bank, supra; Drewry* v. *Bank of Sedley*, 142 Va. 125, 128 S. E. 508, and *Lipman* v. *Norman Packing Co.* (Special Court of Appeals), 146 Va. 461, 131 S. E. 797.

[15] Our conclusion in the instant case is that, while the transaction discloses some suspicious circumstances, fraud is not established by that clear and satisfactory evidence required by law; that the deed is supported by a valuable and adequate consideration; that, if the conveyance was made with a fraudulent intent on the part of the grantor, it is not shown that the grantee had knowledge of such intent; and that the relationship of the parties and the fact that the grantee in the deed acquired preference over other creditors of the

grantor does not defeat the rights of the grantee as a *bona fide* purchaser.

The decree of the trial court will, therefore, be reversed, and the case remanded to the trial court with direction to dismiss the bill of the complainants, and the petition of the creditors who intervened in the suit, at their costs.    The appellants will be awarded their costs in this court.

*Reversed.*