# Staunton

## V. C. Irby v. B. W. Gardner, et al.

September 17, 1931.

Present, Campbell, Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*Hall, Buford & Leftwich,* for the appellant.

*Dillard, Moomaw & Dillard* and *Cocke, Hazlegrove & Shackelford,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

B. W. Gardner filed a bill against Mary C. Irby and V. C. Irby, her son, charging that a deed whereby the mother transferred to the son a certain house and lot in the city 'of Roanoke was made with the intent to hinder, delay and defraud the creditors of the grantor. The Exchange Lumber Company, as a creditor of Mary C. Irby, filed a petition joining in the prayer of the bill; V. C. Irby filed an answer to the bill and the petition. From a decree holding the deed void, V. C. Irby appealed.

This property was purchased by Mary C. Irby in December, 1921, for the sum of $14,000.00, $4,000.00 of which was paid cash and the balance evidenced by notes maturing within five years thereafter. B. B. Irby, the husband of Mary C. Irby and the father of V. C. Irby, owned several parcels of real estate in and around Roanoke, most of which was under mortgage. V. C. Irby was married and lived with his wife and child in another part of the city.

B. B. Irby was taken sick in 1928 and his wife interviewed his creditors and arranged renewal of several notes falling due. In December of that year he owed the Exchange Lumber Company a debt of $7,000.00. Mary C. Irby renewed this note for her husband and at that time became a personal indorser thereon. In August, 1929, B. B. Irby died and his wife qualified as his administratrix.

The deed which is the subject of this controversy is dated May 21st and was recorded May 22, 1930. The consideration named therein is $6,200.00 cash, and the assumption of the payment of two bonds for $1,000.00 each, constituting a first lien on the property, making a total consideration of $8,200.00.

The appellees attack the consideration on two grounds: (1) That there was not in existence a real debt due by the grantor to the grantee. (2) That if the grantee made the advances to the grantor, as claimed, they were gifts and were never intended to be held and asserted by the grantee as debts against the grantor.

The documentary evidence showing that the $6,200.00 was actually paid consists of three notes and two checks, as follows: (1) A note dated October 21, 1927, in the sum of $1,500.00, payable on demand to the order of V. C. Irby, signed by B. B. and Mrs. B. B. Irby, together with a cancelled check bearing the same date, for the same amount, signed by V. C. Irby. (2) A note dated March 3, 1930, payable ninety days after date, in the sum of $900.00, to

the order of V. C. Irby and Mrs. R. N. Whidden, signed by Mary C. Irby, and a cancelled check dated June 5, 1930, payable to the Colonial Savings National Bank, signed by V. C. Irby. It seems that Mary C. Irby borrowed this money from the bank with V. C. Irby and Mrs. Whidden, her daughter, accommodation indorsers on the note securing payment thereof. (3) A note dated January 6, 1930, payable on demand, to the order of V. C. Irby, signed by Mary C. Irby, in the sum of $3,600.00. This was a renewal, in part, of a note evidencing a debt which was incurred on March 28, 1923. Neither the old note nor the cancelled check is produced, but there is a statement from the National Exchange Bank of Roanoke showing that on that date V. C. Irby withdrew from the bank the sum of $2,529.15. V. C. Irby. states further that in June, 1929, the note he had taken evidencing the debt as shown by the above bank withdrawal was out of date and that he let his mother and father have the sum of $1,074.50 at that time. In substantiation of that fact, he filed a cancelled check payable to his mother and father in the above amount, marked "for a loan," and that when he took a note from his mother in January he combined these two obligations. There is a slight discrepancy in the figures, no interest is calculated, but the evidence is uncontradicted and carries conviction.

The two checks are dated January 3rd and 13th, respectively, 1927, payable to his mother for $100.00 each, and on each check is marked, "for a loan."

These total the sum of $6,200.00. Both V. C. Irby and his mother testified that this was not all the money that he had let her have. For instance, he exhibited a check dated October 4, 1921, payable to his mother, in the sum of $900.00, which is barred by the statute of limitation. He exhibits two checks payable to the clerk for delinquent taxes on his father's estate, totalling $103.77. There is another check payable to this mother, dated February 5, 1930, for $150.00.

The positive statements of V. C. Irby and his mother that the money she borrowed from him was intended by them at the time to be treated as a loan and not as a gift, are substantiated by the documentary evidence taken contemporaneously, and the further fact that the larger note was renewed from time to time to prevent the bar of the statute of limitation.

The appellees further contend that the consideration, even if paid, was inadequate. There is conflicting evidence as to the market value of the property. Three men experienced in real estate values, introduced by the appellant, place the value of the property at from $7,500.00 to $8,500.00. Two witnesses introduced by the appellee, on direct examination stated that the value of the property, in their opinion, was around $14,000.00. One of them on cross-examination admitted that real estate values generally in Roanoke had depreciated about thirty per cent. The other witness for the appellee insisted that the property, in his opinion, was worth $14,130.00, but admitted that it was difficult to make any sale of real estate in Roanoke under present conditions.

The testimony of witnesses introduced for the appellant shows that they made a careful examination of the property, took into consideration its need of repair, its age and depreciation, its location, and the present general depreciation in the market value of all properties. A careful examination of this testimony convinces us that the appellant has established by a preponderance of the evidence that the consideration paid and assumed by him was a fair and adequate price for the property. See *Neff* v. *Edwards*, 148 Va. 616, 139 S. E. 291, 294, and cases there cited.

The appellees insist that even though the obligation which constituted a part of the consideration was an honest debt, the indebtedness was used with the actual intent on the part of both Mary C. Irby and V. C. Irby to hinder, delay and defraud the creditors of the grantor.

The evidence relied upon to show such fraudulent intent on the part of Mrs. Irby is the testimony of P. N. Dillard, one of counsel for the complainants. It seems that Mr. Dillard represented B. W. Gardner, the holder of a note for $2,500.00 executed by B. B. Irby and Mrs. B. B. Irby, payment of which was secured by a deed of trust on another house and lot; that due to the decline in value of real estate in Roanoke Mr. Dillard was of the opinion that the sale value of the property was not sufficient to pay this indebtedness. He had several conferences with Mrs. Irby both before and after the execution of the deed to her son, and testified that she told him she did not feel that the $2,500.00 debt was hers and she was not going to let her property on Roanoke street, her home, go; that she would deed it away first.

It further appears that there was not sufficient money in the hands of Mrs. Irby, as administratrix of her husband's estate, to discharge this indebtedness and the property was put up and sold under the deed of trust. At the sale both Mrs. Irby and V. C. Irby were present. The net proceeds of the sale of this property were only $1,246.52, leaving a balance of $1,443.88 on this obligation due by the estate of B. B. Irby and the personal indorsement of Mary C. Irby.

While Mrs. Irby denies making this statement to Mr. Dillard, she stated when a witness in this suit that she executed the deed to her son in order that he might be paid in preference to other creditors, and emphatically denied any intent on her part to evade the obligations of the appellees.

Insolvency does not deprive the owner of the right to dispose of his property at a fair and adequate price, unless the sale or transfer is made with a fraudulent intent. The party alleging fraud must not only prove the fraudulent intent of the grantor, but must go further and prove that the purchaser or grantee, if the sale is made for a valuable consideration, had notice of the fraudulent intent of the

grantor. See *Sanderson* v. *Bell*, 154 Va. 415, 153 S. E. 651, 652, and cases there cited.

Judge Burks in the case of *Neff* v. *Edwards*, *supra*, quotes with approval from the opinion of Judge Buchanan in the case of *Johnson* v. *Lucas*, 103 Va. 36, 48 S. E. 497, where it is said:

"In the absence of a statute, State or Federal, a debtor has the right to prefer one creditor to another. Giving such a preference is not fraudulent, though the debtor be insolvent, and the creditor is aware at the time that it will have the effect of defeating the collection of other debts. This is not hindering or delaying creditors, within the meaning of the statute. It does not deprive other creditors of any legal right, for they have no right to a priority. As was said by Judge Burks, in *Williams* v. *Lord & Robinson*, 75 Va. 390, 402, since 'a debtor has the right to pay one creditor in preference to another, so he may, without the imputation of fraud, secure one creditor to prevent another from gaining an advantage.' *Lucas, Sergeant, etc.,* v. *Clafflin & Co.*, 76 Va. 269, 275–279, and cases cited."

The appellees contend that the statement which Mr. Dillard claims Mrs. Irby made to him constitutes a threat to transfer the property for the purpose of defrauding her creditors, and that this threat, coupled with the relationship of the parties and the fact that the deed was executed the day before and recorded on the day of the sale of the property on which Gardner held a deed of trust, and the failure of Mrs. Irby to tell Mr. Dillard at the time that she was indebted to her son, show a fraudulent intent.

If we concede that the contradicted testimony of Mr. Dillard is true and there is made out a *prima facie* case of fraudulent intent against Mary C. Irby, the statute requires that the grantee shall have notice of such fraudulent intent of the grantor.

The testimony of Mr. Dillard is admissible in evidence as tending to show the fraudulent intent of Mary C. Irby. The alleged statement was not made in the presence of V. C. Irby nor was it shown that he had any knowledge of it. See opinion of Judge Lewis in case of *Paul* v. *Baugh*, 85 Va. 955, 9 S. E. 329.

The appellees contend that V. C. Irby did not mark the evidence of indebtedness cancelled and deliver the same to his mother at the time of the delivery of the deed.

The record shows that V. C. Irby was called as a hostile witness and while being examined as such he was asked about the consideration paid his mother, to which he replied that the evidence of indebtedness was there in the room. Thereupon, his attorney proceeded to examine him and introduced the documentary evidence showing the indebtedness. It is not clear from the record who had possession of these papers between the date of the deed and the date of the taking of the testimony.

It is very clear, both from the testimony of V. C. Irby and his mother, that sometime prior to May 21, 1930, he asked his mother to get together all the papers she had and he took those in his possession and went over them with her, and at that time they found evidence of indebtedness to him amounting to $6,200.00, which was the amount named in the deed, and it was clearly intended that the delivery of the deed should be in complete discharge of this indebtedness. All of the notes were past due and under the circumstances disclosed by the record we think that whether or not the notes were actually delivered to the grantor is immaterial

It is claimed that there has been no change in the possession of the property and that the retention of possession by Mrs. Irby, viewed in the light of the following statement of V. C. Irby, shows a secret trust. He was asked:

"Mr. Irby, you never thought of taking that deed from your mother until after you learned that she was obligated

on the notes to the Exchange Lumber Company and other creditors, did you?" To which he replied:

"I didn't have any reason for taking it because my whole purpose in the matter was to help her have that piece of property for her old age to take care of her. I didn't have any reason for taking it over other than that. As long as she lived I wanted her to have it, and at her death I would have gotten it back if she had not foolishly indorsed the note. That is why I was letting her have it, to take care of her, and I would have gotten my money finally."

A careful reading of the testimony of V. C. Irby convinces one that he made a free and frank disclosure of all the facts within his knowledge pertaining to this transaction. This evidence discloses that he had let his mother have money for the purpose of buying this particular property for a home and that he expected eventually to be paid out of it. It was not his intention so long as his mother lived and was free from financial obligations to demand payment of these loans, but he kept the evidences of debt in such shape that in the event of his mother's death he could enforce payment of them out of her estate. When he ascertained that she had become personally responsible for his father's debts, he feared that the money he had lent her was in jeopardy and immediately requested security, at first in the form of a deed of trust. After his father's death he postponed a final settlement with his mother, fearing that such a settlement might precipitate a creditors' suit. When he realized, however, that his father's estate was hopelessly insolvent, he insisted that his mother secure the payment of her indebtedness to him and accepted the transfer of the property in full discharge of these obligations.

After obtaining the deed, he permitted his mother to occupy a part of the property, for which he charged her no rent; he collected rent from the other tenant and occasionally, when his mother was in need of money, let her collect the rent and use it. He paid the taxes on the property and

$1,000.00 of the indebtedness he had assumed on accepting the deed and had an estimate made of the necessary repairs to the house, which estimate was $2,000.00.

A fair construction of the statement of the witness does not justify the interpretation placed thereon by the appellees, nor does the fact that Mrs. Irby occupied a part of the property show a secret trust or a fraudulent intent on the part of V. C. Irby. The intent gathered from his whole testimony is that he desired to be protected as a preferred creditor of his mother, and that this was his purpose in accepting the deed in question. Judge Burks, in the case of *Neff* v. *Edwards, supra,* said:

"Fraud is in the nature of a crime, and while it does not require proof beyond a reasonable doubt, it is the established doctrine in this State that it must be distinctly charged and proved by clear and satisfactory evidence. Doubts as to the preponderance of the evidence will not suffice to avoid a transaction on the ground of fraud. The law presumes innocence rather than guilt, and fraud will not be presumed on doubtful evidence of circumstances of mere suspicion. *New York Life Ins. Co.* v. *Davis,* 96 Va. 739, 32 S. E. 475, 44 L. R. A. 305. Not only so, but before a deed of conveyance can be set aside on the ground that it was made with intent to hinder, delay and defraud the creditors of the grantor, not only must the fraudulent intent of the grantor be shown, but it must also be made to appear that the grantee had notice or knowledge of such fraudulent intent. A *bona fide* purchaser—that is, one who, without such knowledge or notice, actual or constructive, and who has not been put on such inquiry as would lead to knowledge or notice, and has paid the consideration—will be protected, regardless of the fraud of his grantor. 2 Minor Real Prop., section 1123; *Hutcheson* v. *Savings Bank,* 129 Va. 281, 289, 105 S. E. 677."

There are numerous cases from Virginia and other jurisdictions dealing with the subject of fraudulent conveyances.

Judge Holt, in the case of *Willis* v. *Blue Ridge Bank*, 153 Va. 392, 149 S. E. 624, 628, said that "to undertake to review all of the cases in Virginia which deal with this subject would be a thankless task." Judge Campbell, in the case of *Sanderson* v. *Bell*, *supra*, said: "While the rule of law involved in a suit to set aside a conveyance as fraudulent is well settled, the decision in the particular case depends in a large measure upon the facts adduced." To the same effect see Burks, J., in *Neff* v. *Edwards*, *supra*.

■ The conclusion is that the circumstances are not altogether free from suspicion, but that fraud is not established by that clear, cogent and convincing evidence required; that the deed is supported by valuable and adequate consideration; that even if it be conceded that Mary C. Irby had a fraudulent intent, it is not shown that the grantee had any knowledge of such intent; and that the relation of the parties and the fact that the grantee in the deed acquired a preference over other creditors of the grantor does not defeat the right of the grantee as a *bona fide* purchaser.

The decree of the trial court will therefore be reversed and an order is directed to be entered dismissing the bill of complaint and the petition of the creditors who intervened in the suit.

*Reversed.*