# Staunton

BANK OF POCAHONTAS V. H. J. FERIMER, ET ALS.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Greever & Gillespie* and *R. O. Crockett,* for the appellant.

*S. M. B. Coulling, Ira J. Partlow* and *J. Powell Royall,* for the appellees.

GREGORY, J., delivered the opinion of the court.

The Bank of Pocahontas instituted a suit against Ferimer and others for the purpose of setting aside as fraudulent, two deeds of trust which had been executed to secure two creditors; one to secure J. Shein the payment of $19,200, and the other to secure Rachel G. Russak the payment of $10,000. From a decree in which the chancellor held that the two deeds of trust were valid and binding, the bank has appealed.

Ferimer was a nephew of J. Shein and also a nephew of, Rachel G. Russak. He was indebted to the bank for several substantial sums which were evidenced by his notes and represented money he had borrowed from the bank. These obligations were due and unpaid and Ferimer was being pushed to pay them, when on September 3, 1924, he executed a deed of trust conveying his properties to W. J. Daugherty, trustee, to secure J. Shein the

payment of $19,200. On September 10, 1924, he executed another deed of trust to John Roberts, trustee, to secure the bank the payment of its various debts. Still later, on September 17, 1924, he executed a third deed of trust conveying the same properties to W. J. Daugherty, trustee, to secure Rachel G. Russak the payment of $10,000. At the same time these deeds of trust were executed Ferimer was insolvent and actions had been instituted against him by some of his creditors.

In the bill of complaint filed by the bank in the cause there are the usual allegations of fraud on the part of Ferimer and his two creditors, J. Shein and Rachel G. Russak. It is alleged that their debts, secured by the two deeds of trust, are not *bona fide* and have no real existence; that there was in fact no consideration for the conveyances; that there were several badges of fraud in the transaction such as the relationship of the parties, the insolvency of Ferimer at the time he executed the deeds and the conduct of the parties. In effect it is alleged that Ferimer, Shein and Mrs. Russak consummated the transactions in pursuance of a conspiracy on their part to hinder, delay and defeat the creditors, including the bank, in the collection of their respective debts which they were justly entitled to have paid.

Ferimer, Shein and Mrs. Russak filed their answers denying all fraud and averring that the debts were valid and that the conveyances were made to secure these debts, for a valuable consideration.

It is a useless and unnecessary task to undertake to review all of the cases of this character which have been before this court. The principles applicable to fraudulent conveyance cases have been recently restated in an able opinion by Justice Hudgins in the case of *Irby* v. *Gardner,* 157 Va. 132, 160 S. E. 81, 85. In that case this court said, quoting from the case of *Neff* v. *Edwards,* 148 Va. 616, 139 S. E. 291:

"Fraud is in the nature of a crime, and while it does not require proof beyond a reasonable doubt, it is

the established doctrine in this State that it must be distinctly charged and proved by clear and satisfactory evidence. Doubts as to the preponderance of the evidence will not suffice to avoid a transaction on the ground of fraud. The law presumes innocence rather than guilt, and fraud will not be presumed on doubtful evidence of circumstances of mere suspicion. *New York Life Ins. Co.* v. *Davis,* 96 Va. 739, 32 S. E. 475, 44 L. R. A. 305. Not only so, but before a deed of conveyance can be set aside on the ground that it was made with intent to hinder, delay and defraud the creditors of the grantor, not only must the fraudulent intent of the grantor be shown, but it must also be made to appear that the grantee had notice or knowledge of such fraudulent intent. A *bona fide* purchaser—that is, one who, without such knowledge or notice, actual or constructive, and who has not been put on such inquiry as would lead to knowledge or notice, and has paid the consideration—will be protected, regardless of the fraud of his grantor. 2 Minor, Real Prop. section 1123; *Hutcheson* v. *Savings Bank,* 129 Va. 281, 289, 105 S. E. 677."

Applying the foregoing familiar rule to the evidence in this cause it is at once apparent that it does not sustain the charges of fraud alleged. The evidence is uncontradicted that Ferimer owed Shein $19,200, which had been loaned to Ferimer from time to time. This is not only conclusively proven by the testimony but it is also proven by the documentary evidence introduced. The complainant bank has introduced no evidence to the contrary.

It is also established by the evidence, beyond any doubt, that Ferimer owed Rachel G. Russak $10,000 at the time the deed of trust was executed securing her that amount. To overcome these established facts the complainant relies solely upon what it claims are badges of fraud which it further claims casts upon the defendants the burden of proving an adequate consideration and the *bona fides* of the transactions. One of these alleged badges of fraud

is the relationship of the parties. Ferimer was the nephew of Shein. He was also the nephew of Mrs. Russak. Another badge of fraud relied upon is the insolvency of Ferimer at the time the deeds were made; and still another is the conduct of the defendants. If it be conceded that all of these alleged badges of fraud are shown to exist, the legal effect would simply cast upon the defendants the burden of proving their good faith in the transactions and that the deeds were based upon an adequate consideration. When the evidence is considered it is clearly shown that they have abundantly carried that burden.

Insolvency of the maker of a deed and his blood relationship to the grantee or beneficiary in a deed of trust are not sufficient to establish fraud in the conveyance and justify a court in setting it aside. The mere fact that a debtor has seen fit to prefer one creditor over another is not any ground for setting aside a conveyance. Insolvency and relationship simply call upon the court for close scrutiny of the transaction, and the conduct of, and the evidence offered by, the grantee.

In *Irby* v. *Gardner, supra,* it was said: "Insolvency does not deprive the owner of the right to dispose of his property at a fair and adequate price, unless the sale or transfer is made with a fraudulent intent. The party alleging fraud must not only prove the fraudulent intent of the grantor, but must go further and prove that the purchaser or grantee, if the sale is made for a valuable consideration, had notice of the fraudulent intent of the grantor. See *Sanderson* v. *Bell,* 154 Va. 415, 153 S. E. 651, 652, and cases there cited.

"Judge Burks, in the case of *Neff* v. *Edwards, supra,* quotes with approval from the opinion of Judge Buchanan in the case of *Johnson* v. *Lucas,* 103 Va. 36, 48 S. E. 497, where it is said:

" 'In the absence of a statute, State or Federal, a debtor has the right to prefer one creditor to another. Giving such a preference is not fraudulent, though the

debtor be insolvent, and the creditor is aware at the time that it will have the effect of defeating the collection of other debts. This is not hindering or delaying creditors, within the meaning of the statute. It does not deprive other creditors of any legal right, for they have no right to a priority. As was said by Judge Burks, in *Williams* v. *Lord & Robinson,* 75 Va. 390, 402, since "a debtor has the right to pay one creditor in preference to another, so he may, without the imputation of fraud, secure one creditor to prevent another from gaining an advantage." *Lucas, Sergeant, etc.,* v. *Clafflin & Co.,* 76 Va. 269, 275-279, and cases cited.' "

■ The most that can be said of the transactions here involved is that Ferimer has preferred two of his creditors, Shein and Mrs. Russak, over his other creditors. This is lawful in Virginia and it does not taint such transactions with any fraud. There are numerous Virginia cases which support this familiar proposition. Some of them are, *Hutcheson* v. *Savings Bank,* 129 Va. 281, 105 S. E. 677; *Johnson* v. *Lucas,* 103 Va. 36, 48 S. E. 497; *Surratt* v. *Eskridge,* 131 Va. 325, 108 S. E. 677.

■ Another ground relied upon by the complainant is that there was a secret trust in favor of Ferimer and his children in the sale to Shein of certain property located in West Virginia which was a part of the transaction wherein Ferimer made the deed of trust conveying his Virginia property to secure Shein the payment of the $19,200. It is also claimed that there was a false recital of the consideration for the "Shein deed of trust," in that it was recited that Ferimer owed Shein $19,200 when as a matter of fact, as part of that amount, Ferimer was in possession of a check for $1,000 made by Shein and payable to Ferimer which had not been presented for payment or cashed. The trial court deducted this $1,000 from the $19,200 and entered its decree for the balance of $18,200. It is claimed that the $1,000 was fraudulent and tainted the whole transaction. These contentions are made by the complainant upon the testi-

mony of Ferimer who was called as an adverse witness but who proved to be quite a willing witness for the complainant, notwithstanding he was one of the principal defendants and had filed an answer in the cause denying all fraud and conspiracy, and asserting, not only his own innocence, but the innocence of Shein and Mrs. Russak as well.

Shein and Ferimer were on good terms. Shein had, on numerous occasions financially aided Ferimer but after this suit was instituted Shein died and the suit was continued against his administrator with the will annexed. Shein lived in Baltimore, Md., at the time of his death, and his widow qualified there as his personal representative. After the death of Shein, Ferimer tried to borrow money from Mrs. Shein and she flatly refused to assist him financially. Counsel for the defendants, Mrs. Russak and the administrator of Shein, suggest that the change of attitude of Ferimer is accounted for by that incident. However that may be, the fact that Ferimer filed an answer in this cause denying any fraud and averring the *bona fides* of these transactions, and the further fact that he later changed his position and gave testimony upon which he would have the court denounce his previous dealings with Shein and Mrs. Russak as fraudulent, weaken his testimony to such an extent that it would be unsafe to found a judgment or decree upon it. When his testimony is eliminated, as we are compelled to do, there is no other reliable evidence in the record which even tends to support the charge of a secret trust.

The record has been combed in an attempt to pick out bits of evidence which would lend color to the charges of fraud. The evidence has been scrutinized from beginning to end and we have found no evidence that would justify this court in disturbing the transactions which have been attacked.

The Honorable A. C. Buchanan, the trial judge, found no cause for setting the deeds aside. He delivered an

opinion which disposed of the contentions made, expressing himself thus:

"I have carefully considered the record in this cause and the briefs of counsel. My opinion is that the complainant has failed to show that the deeds of trust in favor of J. Shein and of Mrs. Russak were fraudulent as alleged in the bill.

"It has been often said by our Supreme Court that the proof in cases of this character must be clear and convincing and that fraud is not to be assumed on doubtful evidence or circumstances of mere suspicion. *Hutcheson* v. *Savings Bank,* 129 Va. 281, 105 S. E. 677.

"The evidence relied on by complainant does not, in my opinion, meet these requirements. No direct evidence is offered that Ferimer did not owe Shein the $19,200 referred to in the deed of trust. Ferimer himself, who was evidently a willing witness for the complainant, does not make such claim. He does say, and the fact is established, that a check for $1,000 given to him, and which apparently was part of the $19,200 he still has and it is filed with his deposition and has not been cashed. There is no satisfactory explanation of why he held this check other than the one given by him, that he did not need the money at that particular time, that he had some understanding with Shein and felt that he could take his time. But the most effect that can be given to this transaction is that the indebtedness due Shein under the deed of trust is only $18,200. Certainly Shein gave him the check; no reason is given why he could not have used it, and his failure to do so could not be allowed to destroy the balance of the debt and avoid the deed of trust.

"This circumstance, the fact that Shein's widow when she qualified as executrix swore there was no personal estate; the withdrawal of the threat to foreclose, together with the relationship of the parties (and there is little in addition on which complainant may rely), are perhaps circumstances of suspicion. But such support as they

give to the complainant's case is removed by the clear evidence of the witness Pippen, and such support as is given him by Berman and the checks filed with the latter's evidence. Pippen testifies in detail as to the arrangement about the deed of trust; that Ferimer and Shein agreed that the then indebtedness of Ferimer to Shein was $15,700 and Shein let Ferimer have $3,500 more to make up the $19,200. He supports his testimony in large part by letters and copies which he files. In view of his testimony, coupled with that of Berman, and the documentary evidence filed by them, it cannot be said that there is any clear and convincing evidence that there was fraud in the transaction.

"The defendants' witnesses are strongly corroborated by the evidence of Christie introducing the statement made by Ferimer on November 12, 1927, at Keystone, but I have not considered this evidence, which was objected to, because it is hearsay as evidence in chief, and cannot be used to contradict Ferimer, as no foundation was laid.

"As to the alleged secret trust in regard to the Bluefield property my view is that there is not sufficient evidence of any enforceable agreement of repurchase to render this transaction void; and further that if such agreement were proved, it would affect only that property and would not suffice in itself to avoid the deed of trust on the Pocahontas property. At most it would be a circumstance to be considered along with other alleged badges of fraud.

"I do not consider it necessary to review all the evidence. I have considered all points that have been argued in the case and the evidence claimed to support them and my conclusion is as stated above, that the complainant has failed to show fraud entitling it to have the deed of trust set aside, but that the debt secured thereby should be credited by the $1,000 check that was not cashed.

"The evidence likewise fails to establish fraud in the Russak deed of trust. Such evidence as there is in the

record tends rather to show affirmatively the *bona fides* of this transaction.

"A decree may be entered in accordance with these views."

The foregoing opinion is adopted and made a part of the opinion of this court.

The decree is affirmed.

*Affirmed.*