CATHERINE MERRITY, GENERAL ADMINISTRATRIX OF
THE ESTATE OF ELIZABETH SWAVELY, DECEASED,
ETC., PLAINTIFFS, v. PRUDENTIAL INSURANCE COM-
PANY OF AMERICA, DEFENDANT.

CATHERINE MERRITY, GENERAL ADMINISTRATRIX OF
THE ESTATE OF ELIZABETH SWAVELY, DECEASED,
ETC., PLAINTIFFS, v. PRUDENTIAL INSURANCE COM-
PANY OF AMERICA, DEFENDANT.

Decided July 23, 1932.

For the plaintiffs, *Collins & Corbin.*

For the defendant, *Perkins & Drewen.*

ACKERSON, S. C. C.  Two actions with the same title have
been instituted in this court to recover the amounts of two
policies of life insurance issued by the defendant company
upon the "joint life of  *  *  *  Howard M. Swavely and
Elizabeth Swavely, husband and wife,  *  *  *  payable to
the survivor of Howard M. Swavely and Elizabeth Swavely,
beneficiary."  The policies are in the amounts of $2,000 and
$3,000 respectively, and with this exception are identical in
terms, each being made "payable immediately upon receipt
of due proof of the first death among the insured," and being
uncontestable after one year, except for non-payment of
premium and each containing a clause reading "the right to
change the beneficiary has not been reserved by the insured."

The complaints in these actions are practically identical and allege the issuance of the aforesaid policies by the defendant on April 10th, 1928, and June 22d, 1928, respectively, and copies thereof are attached to and made a part of the complaints. It is further alleged that said Elizabeth Swavely died on November 7th, 1930, as the result of burns intentionally inflicted by said Howard M. Swavely, who, because thereof, was subsequently convicted of murder in the first degree with a recommendation for life imprisonment. It is also alleged that on September 11th, 1912, said Howard M. Swavely was legally married to one Minnie Campbell Swavely, who is still alive and the lawful wife of said Howard M. Swavely, and that in July, 1926, he married the said Elizabeth Swavely, who was unaware of the previous marriage, and that they lived together as husband and wife until the murder of said Elizabeth Swavely, who left her surviving as her sole next of kin, the plaintiffs Catherine Merrity, a sister, and Michael J. Whalen, a brother, and that on September 23d, 1931, letters of general administration upon the estate of said Elizabeth Swavely were duly granted to Catherine Merrity, who has duly qualified as such administratrix. The complaints conclude with the general allegation that the plaintiffs have performed all conditions of the policies on their part, and that the amounts thereof have not been paid by the defendant, and the plaintiff Catherine Merrity, general administratrix of the estate of Elizabeth Swavely, deceased, or in the alternative Catherine Merrity and Michael J. Whalen, individually, as sole next of kin of said Elizabeth Swavely, deceased, demand the total amount of said policies.

The defendant moves to strike out the complaint in each action on the general ground that neither sets forth a cause of action and the proper determination of this question depends upon whether the theory upon which the complaints are drawn is based upon sound principles of law. The theory is that the surviving beneficiary, Howard M. Swavely, cannot recover on the policies in question because of his felonious killing of his co-insured, Elizabeth Swavely, and that under such circumstances, the defendant is not released from lia-

bility under the policies, but is obliged to pay the proceeds thereof to either the estate of said Elizabeth Swavely, or directly to her next of kin.

It is, of course, settled by the unshaken voice of authority that a beneficiary in an insurance policy who murders the insured forfeits his rights thereunder. As was said by Judge Oliphant in the case of *Swavely* v. *Prudential Insurance Co.,* 10 *N. J. Mis. R.* 1 (at *p.* 4) ; 157 *All. Rep.* 394 (at *p.* 395) (which concerned another phase of the same policies involved in the instant cases) : "Nothing could be clearer than that to permit a murderer to collect insurance upon the life of the person he has murdered would be contrary to public policy." See the long line of authorities collected in the case just cited.

It must also be conceded, according to the great weight of authority, that where the contract of insurance is made directly between one insured and the company for another's benefit, a felony of the kind indicated on the part of the beneficiary will not relieve the company of all liability on the policy, but recovery can be had usually by the representative of the insured, and for the benefit of the latter's estate. *Slocum* v. *Metropolitan Life Insurance Co. (Mass.),* 139 *N. E. Rep.* 816; *Schmidt* v. *Northern Life Association,* 112 *Iowa* 41; 83 *N. W. Rep.* 800; *Kascoutas* v. *Federal Life Insurance Co.,* 193 *Iowa* 343; 185 *N. W. Rep.* 125; *Robinson* v. *Metropolitan Life Insurance Co.,* 69 *Pa. Super. Ct.* 274; *Supreme Lodge K. L. H.* v. *Menkhausen (Ill.),* 70 *N. E. Rep.* 567; 65 *L. R. A.* 508; *Johnston, Admr.* v. *Metropolitan Life Insurance Co. (W. Va.),* 100 *S. E. Rep.* 865; 7 *A. L. R.* 823; *Anderson* v. *Life Insurance Co. (N. Car.),* 67 *S. E. Rep.* 53; *New York Life Insurance Co.* v. *Davis (Va.),* 32 *S. E. Rep.* 475; *Inter-Southern Life Insurance Co.* v. *Butts (Ark.),* 349; 16 *S. W. Rep.* (*2d*) 184; *Metropolitan Life Insurance Co.* v. *Shane,* 98 *Ark.* 132; 135 *S. W. Rep.* 836; *Hewitt* v. *Equitable Life Assurance Society,* 8 *Fed. Rep.* (*2d*) 706; *Sharpless* v. *Grand Lodge A. O. U. W. (Minn.),* 159 *N. W. Rep.* 1086; 70 *A. L. R.* 1542, and cases therein cited; 25 *Cyc.* 895; 37 *C. J.* 576, § 341.

The principle underlying the foregoing authorities seems

to be that where there is no condition in the policy voiding it in case of the murder of the insured, the liability of the insurance company is the same where death is the result of murder as where it is produced by any other cause, and while public policy forbids the murderer from recovering on the policy, the rule will not be extended to excuse the insurer from paying those who would take if no beneficiary had been named in the policy. A fund having been thus created in the hands of the insurer by the insured a trust is declared to result in favor of the estate of the insured who created the fund. But whatever reasoning may have motivated the courts in other jurisdictions, I do not find that the courts of New Jersey have ever been called upon to apply the principle, nor do I believe we are called upon to apply it in the case *sub judice*.

In all of the cases just cited, the policy insured just one person's life for the benefit of a single designated beneficiary and the insured himself contracted directly with the company for the policy and paid the premiums thereon, and in most of them the right was reserved to change the beneficiary. In the instant case, however, the policies insure the joint life of two persons with the proceeds expressly payable to the survivor of them and no right is reserved to change the beneficiary. The insurance contract was made between the company on the one hand and two insured persons on the other, and both insured are made responsible for the premiums and are given certain joint rights in advance of the maturity of the policies. Should these policies be controlled by the same rule as applied in the cases above cited?

An exhaustive search for precedents has revealed only two cases in point, and unfortunately they have taken opposite positions upon the subject. These cases are *Equitable Life Insurance Society* v. *Weightman, Admr. (Okla., 1916)*, 61 *Okla.* 106; 160 *Pac. Rep.* 629; *L. R. A.* (1917—B) 1210, and *Spicer* v. *New York Life Insurance Co. (Dis. Ct. M. D. Ala.)*, 263 *Fed. Rep.* 764; *affirmed (C. C. A. 5th Cir., Ala., 1920)*, 268 *Fed. Rep.* 500; Cert. denied, 255 *U. S.* 572.

In the Weightman case, which was the first decided, the

insurance company issued a policy covering and insuring the joint life of Thomas Gentry and Alverta Gentry husband and wife, payable to the survivor of them. There was no provision for an alternative beneficiary in the event of disqualification of either beneficiary and no provision that the policy should be forfeited in the event of the murder of the insured. Subsequently Alverta Gentry murdered Thomas Gentry and was convicted of the crime. The suit was brought by an assignee of Alverta Gentry. The administrator of the estate of Thomas Gentry intervened claiming the insurance money. Judgment was rendered in favor of the administrator which on appeal was affirmed.

The court rested the decision upon the proposition that the policy was not joint in the sense that the two insured persons owned all rights under the policy as joint tenants, and that, therefore, the murderer did not take as survivor and that the policy partook of the nature of two separate policies upon the life of each insured for the wholly separate benefit of each of the insured and applied the above mentioned rule applicable to policies where there is only one insured and one designated beneficiary.

On the other hand in the Spicer case it was held that where a husband murdered his wife, an insurance policy on the joint life of the husband and wife, payable to the survivor on the death of either, cannot be collected by the wife's representatives, although the husband's conviction for the murder precludes him from recovering on the policy. In the course of the opinion the court said:

"The policy was on the joint lives of the husband and wife, payable to the survivor on the death of either * * *. The liability imposed on the insurer by the policy is purely contractual. That instrument is the measure of the rights of everybody under it. It furnishes no support for a recovery against the insurer by one in whose behalf or favor the insurer has promised to pay nothing in the event of the death of one of the insured, leaving the other surviving * * *. The acceptance of the policy evidences the consent of each of the insured that the occurrence, while the policy is in force,

of his or her death, the other insured surviving, shall have the effect of entitling the survivor and no one else, to the sum payable under the policy. The terms of the policy give to the death of one of the two insured the effect of making the survivor the sole beneficiary * * *. The unrevoked designation in the policy sued on of the survivor of the two persons jointly insured as the sole beneficiary in the event of the death of the other insured while the policy was in force, stands in the way of the personal representative of the deceased insured having any valid claim to the insurance money sought to be recovered."

I am unable to follow the reasoning adopted in the Weightman case. If each policy in question is in the nature of two separate policies upon the life of each insured for the wholly separate benefit of each of the insured, then it inevitably follows that there will be two maturities, and the company would be liable for double the face of the policy, or else the respective beneficiaries would only be entitled to one-half of the face of the policy upon the death of his particular insured. In other words, under the theory of two policies embraced in one, upon Mrs. Swavely's death one such policy would mature, but the other on the life of Mr. Swavely would not mature until his death, and what amount would be payable upon the death of either? Nor does it make any difference as I see it, whether the two insured persons owned all rights under the policies in question as joint tenants so as to give the right to the proceeds to the survivor by operation of law, for the parties themselves, by the express terms of the insurance contract, have provided for just that result. Furthermore, if the interest of the two insured persons in the fund in the hands of the insurer is not joint but several, then it is difficult to understand how a fund created, in part at least, through the payments of the two insured, can be legally claimed by the representatives of only one of them. As already observed, the underlying theory which permits a recovery for the estate of an insured person who has been murdered by the beneficiary specifically named in the policy, is that the policy in that event stands as though no beneficiary had been designated

which leads logically to the conclusion that the fund in the hands of the insurer, created through the payment of premiums by the sole insured, should be recoverable by the estate of the person making such payments. In the case *sub judice*, however, the situation is different. The insurance fund was produced through the joint payments of two insured who expressly provided that the survivor should take all.

There is no allegation in either complaint that Mrs. Swavely alone contracted for these policies, nor that she alone paid the premiums, and in fact the policies insured Mr. and Mrs. Swavely jointly and they were jointly obligated to pay: the premiums. If public policy prohibits Mr. Swavely from taking any benefits from the policies, does it also cast upon the estate of Mrs. Swavely the right to the whole fund which it is not claimed was created by her payments alone? I think not. Certainly a resulting trust to the whole fund cannot arise in favor of the estate of one who has jointly created it with another, especially where the parties have specifically contracted that the survivor should take all.

Even if we concede that the two insured had no joint estate or interest in the insurance contract as beneficiaries because only one could ultimately take as survivor thereby terminating the expectancy of the other, nevertheless, their interest in the fund considered as a trust fund resulting from the failure of a beneficiary would be a joint interest resulting in the application of the principle of survivorship, and the survivor having forfeited his rights under the policy, no recovery could' be had by the representatives of the deceased co-insured.

An entirely different picture is presented in the case of a joint life policy, with proceeds payable to the survivor upon the death of either insured than in the case of a single life policy designating a single beneficiary. In the joint life policy the parties insured have jointly contracted with each other as well as with the insurance company, as by analogy in the case of joint wills and each engages jointly to pay the premiums to create the insurance fund, and by the provision for survivorship each insured has effectively eliminated his next of kin from direct participation in the proceeds of the policy. If

the surviving party cannot take the contract it is necessarily at an end. In the case of a single life policy, however, the fund is created through the payments of a single insured with whom the company directly contracts, and if the beneficiary forfeits his rights under the policy, there is nothing standing in the way of permitting the fund created by the insured from resulting in favor of the estate of the insured.

I am of the opinion that the complaint in each of the above actions does not set forth a cause of action and will, therefore, be stricken out, and an order may be presented in accordance with the conclusion thus reached.